Gaye Levy AYON, Plaintiff-Appellant,

v.

Arthur F. SAMPSON, Administrator, General Services Administration, Defendant-Appellee.

No. 75–3317.

United States Court of Appeals, Ninth Circuit.

Oct. 18, 1976.

---

Lembhard G. Howell (argued), Seattle, Wash., for plaintiff-appellant.

Thomas B. Russell, Asst. U. S. Atty. (argued), Seattle, Wash., for defendant-appellee.

Before KOELSCH and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, Senior District Judge:

In this action for damages appellant, Gaye Levy Ayon,[1] claims sex discrimination in her non-selection for a management intern position and retaliatory harassment in her employment, in violation of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq.[2] The district court

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. When the complaint was filed and when judgment was entered, appellant was unmarried, her last name being Levy. Apparently she married while the appeal was pending and took her married name of Ayon.

2. In her complaint appellant named the General Services Administration, United States Department of Agriculture, Forest Service, Region 6, and numerous officials and employees as defendants. In an order entered January 30, 1974, the district court dismissed the action as to all defendants except Arthur F. Sampson, Administrator of General Services Administration, holding that the only appropriate defend-

adopted findings of fact and conclusions of law of a special master and dismissed the complaint, finding that there had been no discrimination in the non-selection of appellant for the management intern position and that the court lacked jurisdiction with respect to the retaliatory harassment claim. We reverse the holding on lack of jurisdiction and remand to the district court for further consideration of this claim.

### Background

Appellant, an employee of the United States Forest Service, was employed as a secretary and later as an administrative assistant for the Seattle Federal Executive Board. On March 29, 1972, she filed an application for one of two management intern positions [3] with the General Services Administration (GSA). Appellant's application was considered with those of two men, the men being selected to fill the positions. The selecting official, William McVay, Director of Administration of GSA for Region 10, found that the two male applicants were more fully qualified than was appellant.

On June 14, 1972, appellant filed an informal complaint with the Civil Rights Division of GSA, charging violation of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (an amendment to the Civil Rights Act of 1964), in that she had been discriminated against because of her sex. On July 5, 1972 appellant filed a formal complaint against McVay and Roy Vernstrom, Regional Administrator of GSA for Region 10 and chairman of the Federal Executive Board,[4] alleging sex discrimination in her non-selection.

On July 20, 1972, appellant received a letter from the Regional Personnel Officer for the Forest Service, Region 6, advising her that her employment would be terminated effective August 4, 1972, because she had failed to satisfactorily complete her probationary employment period. On August 3, 1972, appellant received another letter advising her that the termination letter of July 20 had been withdrawn and that she had satisfactorily completed her probationary period.[5]

On July 27, 1972, appellant filed a second informal complaint of sex discrimination charging retaliation harassment. On August 10, 1972, she filed a formal complaint alleging, inter alia, that the Forest Service had conspired with GSA to terminate her employment in retaliation for her previous complaint.

On November 22, 1972, appellant received a letter from the Director of Civil Rights of GSA advising her that her complaints had been investigated and that no evidence had been found to support the charges of sex discrimination or harassment. The Director did note, however, that "a full implementation of the agency Equal Employment Opportunity Program should have taken into account ways to correct Region 10's underutilization of women workers" and informed appellant that she would be offered a management intern position in Region 10 no later than July 1, 1973. Appellant did in fact assume a management intern position on April 1, 1973. In the meantime, she had filed this action on February 6, 1973, seeking review of the agency decision on her sex discrimination complaints.

---

ant was the head of the department agency charged with the unlawful discrimination. See 42 U.S.C. § 2000e–16(c). The court then appointed a United States Magistrate as special master to conduct a hearing and report to the court, with findings of fact and conclusions of law. The dismissal of the other defendants is not questioned on this appeal.

3. A management intern is a trainee in a two-year program designed to prepare participants for management positions in GSA.

4. The special master found that McVay and Vernstrom had encouraged appellant to apply for the position and that McVay had "made effort beyond the routine" to get appellant's files and documents together so that she could be considered for the position in 1972.

5. It appears from the master's oral opinion following hearing that appellant actually was no longer a probationary employee when she received the letter of July 20, and that someone in the Forest Service Personnel Office had made a "mistake". The master condemned the action as an "inexcusable error".

## Proceedings in District Court

Following an extended hearing, the special master entered a detailed oral opinion on November 4, 1974, followed by detailed findings of fact and conclusions of law filed on March 20, 1975. The district court, after reviewing the record, adopted the report of the special master in its entirety, together with his findings of fact and conclusions of law. Pursuant to the recommendation of the special master, a judgment of dismissal was entered.

With respect to appellant's claim of sex discrimination in her non-selection for the management intern position, the special master found, *inter alia,* that "All three of the candidates were qualified, however, it was reasonable for Mr. McVay to conclude at the time he made his decision that Mr. Henry and Mr. Schildmeyer were more highly qualified for the positions." The conclusions of law on this claim read:

"2. Mr. McVay's judgment that Miss Levy had such difficulties in working around and with other people and in office situations was a legitimate basis for evaluating her qualifications.[6]

"3. Mr. McVay's consideration of the candidates on the basis of their backgrounds in finance, economics, accounting and business or his consideration as to which future available position they might fit into, were not proper, given the objectives of the management intern program of GSA.

"4. There was nothing in the Agency's Affirmative Action or Equal Employment Opportunity Program that would require the Agency to select a qualified woman applicant in preference to male applicants with higher qualifications.

"5. Sex discrimination did not play a part in the nonselection of Gaye Levy, for the Management Intern Position."

With respect to the charge of harassment and retaliation, the district court adopted the conclusion of the special master that the court did not have jurisdiction because "Congress did not, in passage of 42 U.S.C. 2000(e)–16, refer to or incorporate the language of the part of the 1964 Civil Rights Act pertaining to harassment and retaliation [42 U.S.C. 2000(e)–3] as they did in incorporating into 42 U.S.C. 2000(e)–16 the language referring to discrimination in hiring, firing and promotion as found in 42 U.S.C. 2000(e)–2."

## Jurisdiction of Retaliation Claim

■ Appellee confesses error with respect to the conclusion that the court lacked jurisdiction of the claim of retaliation and harassment. We agree with the parties that Congress, in enacting 42 U.S.C. § 2000e–16 and thereby extending the equal employment opportunity provisions of the Civil Rights Act to federal employees, intended to include the protections from harassment and retaliation embodied in the Civil Rights Act.

Section 2000e–16(d) reads:

"(d) The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder."

Section 2000e–5(g) provides in part:

"No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or *in viola-*

---

**6.** The master, in his oral opinion, noted that Mr. Henry, one of the male applicants, was clearly the most qualified of the three. As between appellant and the other male applicant, the master found their qualifications to be substantially similar, concluding that McVay chose between them essentially on the basis of the appellant's personality problems. Miss Levy's superior, as well as several persons Miss Levy had listed as references in her application, stated that she had difficulties working with other people, particularly her subordinates.

*tion of section* 2000e–3(a) of this title." (Emphasis added.)

Section 2000e–3(a) is the provision prohibiting retaliation and harassment:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e–2000e–17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

When these sections are read together, it is clear that Congress incorporated the protections against retaliation in its enactment of § 2000e–16.

This conclusion is supported by the statement in House Report No. 92–238 on the proposed enactment of § 2000e–16:

"Accordingly there can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector." U.S.Code Cong. & Admin. News, pp. 2137, 2158 (1972).

We conclude that in enacting § 2000e–16, Congress intended to, and did incorporate into that section the provisions of the Civil Rights Act prohibiting harassment or retaliation for the exercise of those remedial rights established by the Act. Accordingly we find that the district court had jurisdiction to consider appellant's charges of retaliation.

*Discrimination*

Appellant argues, essentially, that where an agency, in the employment context, must choose between a qualified man and a qualified woman, the affirmative action policy established by Executive Order 11478 [7] "suggests a duty to select the woman." She contends that the affirmative action policy and the underrepresentation of women in the GSA should have been given greater consideration in the selection decision. GSA's failure to do so, it is argued, raises serious doubt as to its good faith and suggests the presence of subtle discrimination.[8]

Appellee argues that McVay did not select appellant primarily because of her personality problems, and not because of her sex. The Government contends that McVay, in so doing, was following the hiring mandates of 5 C.F.R. 330.101 which states:

"An appointing officer may fill a position in the competitive service by any of the methods authorized in this chapter. He shall exercise his discretion in each personnel action solely on the basis of merit and fitness and without the discrimination prohibited in Part 713 of this chapter."

Appellee further contends that even if the affirmative action plan is considered, the Government is not required to select a qualified woman over a more qualified man, because to do so would establish preferential hiring quotas which are themselves discriminatory. On balance, we find appellee's argument more persuasive.

---

**7.** Executive Order 11478 (August 8, 1969) required each executive department and agency to establish and maintain an affirmative program of equal employment opportunity, and "to provide sufficient resources to administer such a program in a positive and effective manner; assure that recruitment activities reach all sources of job candidates; utilize to the fullest extent the present skills of each employee; provide the maximum feasible opportunity to employees to enhance their skills so they may perform at their highest potential and advance in accordance with their abilities. . . ." [3 C.F.R. p. 804].

**8.** The United States Supreme Court has cautioned that Title VII prohibits subtle, as well as overt, discrimination:

"In the implementation of such decisions [relating to employment] it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ Upon review of the record, we agree with the master's finding that McVay's non-selection of appellant was based primarily on her personality problems. We are unable to say that the ability to get along with one's co-workers would not be an important qualification for an individual in a management position, or that a selecting official could not give substantial weight to that factor in making his selection. While such a selection process is dependent upon the individualized judgment of the selecting official and is therefore subject to opportunities for subtle discrimination, we find none here. That appellant was later selected for an intern position does not alter our view, since the relative qualifications of the applicants for that position are not before this court.

■ We agree with the district court that nothing in the Affirmative Action Plan or the Equal Employment Opportunity Program requires a federal agency to employ a qualified woman in preference to a more qualified man. Title VII was enacted to eliminate sex as a factor in the employment context, not to establish it as a primary consideration. This intention was codified in a portion of the act, 42 U.S.C. § 2000e–2(j), which provides:

"Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group, because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area. . . ."

The Supreme Court has held that Title VII was not enacted to establish preferential hiring practices in favor of those individuals who were previously the subjects of discrimination. In the leading case of *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1970), the Court stated:

"The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees . . . Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority, or majority, is precisely and only what Congress has proscribed."

Of more direct impact to our consideration here, the Court concluded:

"Congress has not commanded that the less qualified be preferred over the better qualified simply because of minority origins. Far from disparaging job qualifications as such, Congress has made such qualifications the controlling factor, so that race, religion, nationality, and sex become irrelevant." 401 U.S. at 436, 91 S.Ct. at 856.

We conclude that the evidence fully supported the finding of the district court that sex discrimination did not play a part in appellant's non-selection for the intern position and that the provisions of Title VII did not require her selection over a more qualified male applicant.

*Conclusion*

We affirm the district court's judgment dismissing appellant's claim of sex discrimination in her non-selection for the management intern position. We reverse the holding of the district court that it did not have

jurisdiction of the claim based on retaliation and harassment and reverse and remand for further consideration of this claim.

Affirmed in part; reversed and remanded in part.