# United States Court of Appeals
## For the First Circuit

No. 06-1614

MYRNA GÓMEZ-PÉREZ,

Plaintiff, Appellant,

v.

JOHN E. POTTER, Postmaster General,
UNITED STATES POSTAL SERVICE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Baldock,* Senior Circuit Judge,
and Howard, Circuit Judge.

Edelmiro A. Salas-González, with whom José L. Ramírez-de León
were on brief, for appellant.
August E. Flentje, Attorney, Appellate Staff, Civil Division,
with whom Leonard Schaitman, Peter D. Keisler, Assistant Attorney
General, Rosa Emilia Rodríguez-Vélez, United States Attorney, and
David G. Karro, Attorney, United States Postal Service, were on
brief, for appellee.

February 9, 2007

---

* Of the Tenth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** Myrna Gómez-Pérez ("Gómez") was a window distribution clerk for the United States Postal Service ("USPS"). Gómez alleges that she was subject to retaliatory treatment after filing an age discrimination complaint against her supervisors. She then filed suit against the USPS and John Potter ("Potter") in his capacity as Postmaster General, alleging, inter alia, violations of Section 15 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. The district court granted summary judgment to the USPS and Potter on Gómez's ADEA claim on the ground that the United States had not waived sovereign immunity as to retaliation claims under the ADEA. Gómez appeals from this decision. After careful consideration, we conclude that the USPS and Potter have waived sovereign immunity with respect to ADEA suits, but that Section 15 of the ADEA does not provide a cause of action for retaliation by federal employers.

## I. Background

We briefly recount the facts relevant to Gómez's claim. Gómez began working for the USPS in New York in 1987. In 1995, Gómez was transferred to the Caribbean District, and began working in Puerto Rico. Gómez was working at the Dorado Post Office in October 2002 as a full-time window distribution clerk when she requested a transfer to the Moca Post Office in order to be closer to her mother, who was ill. Gómez's supervisor approved the transfer, and Gómez began working at the Moca Post Office as a

-2-

part-time window distribution clerk. Approximately one month later, in November 2002, Gómez requested a transfer back to the Dorado Post Office as a full-time window distribution clerk. On the same day, Gómez's supervisor converted the Dorado window distribution clerk position to a part-time position and filled it with another employee. Gómez's supervisor denied Gómez's transfer request.

After filing a grievance (which was denied), Gómez filed an equal employment opportunity complaint with the USPS, alleging that she had been discriminated against on the basis of her age. Gómez was forty-five years old at the time. After Gómez filed her complaint, she alleges that she was subject to various forms of retaliation. Gómez alleges that her supervisor called her to meetings during which groundless complaints were leveled against her. In addition, Gómez alleges that USPS posters related to sexual harassment were defaced and that her name was written on the posters. Gómez also alleges that her supervisors complained that she was sexually harassing her co-workers, when in fact she was not. Gómez states that her co-workers began to harass her and tell her to "go back where you belong." Finally, Gómez states that her work hours were drastically reduced after she filed the complaint.

Gómez filed suit against the USPS and Potter (in his official capacity) in the United States District Court for the District of Puerto Rico on November 11, 2003, alleging, inter alia,

that she had been retaliated against for filing her EEO Complaint, and that this retaliation constituted a violation of the ADEA, 29 U.S.C. § 633a.  On July 7, 2005, the USPS and Potter filed a motion for summary judgment.  The court referred the matter to a magistrate judge, and on January 30, 2006, the magistrate judge issued a report and recommendation that the motion for summary judgment be granted on the grounds that the United States had not waived sovereign immunity for retaliation suits under the ADEA. Gómez filed an objection to the report and recommendation, but the district court adopted it and granted summary judgment to the USPS and Potter on February 28, 2006.  Gómez now appeals from the grant of summary judgment.

## II.  Discussion

We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the non-movants. Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### A. Sovereign Immunity

The United States is entitled to immunity from suit without its consent.  Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005); see also United States v. Horn, 29 F.3d 754, 761-62 (1st Cir. 1994) (discussing the historical background of sovereign

-4-

immunity). Although the USPS is independent from the executive branch, the Supreme Court has held that the Postal Service enjoys the federal government's immunity from suit because of its significant government powers. Dolan v. U.S. Postal Serv., 126 S. Ct. 1252, 1255-56 (2006). Potter, in his official capacity as Postmaster General, enjoys similar immunity. See Loeffler v. Frank, 486 U.S. 549, 562 n.8 (1988) ("Whenever the head of the Postal Service acts in his official capacity, he is acting in the name of the Postal Service. Thus, here . . . the acts of the named defendant are always chargeable as acts of the person or entity subject to the [waiver of immunity]."). Therefore, in order for Gómez to bring suit against the USPS and Potter, we need to find an "unequivocal" waiver of immunity that is expressed in "specific" statutory language. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. King, 395 U.S. 1, 4 (1969). The Postal Reorganization Act, however, generally "waives the immunity of the Postal Service from suit by giving it the power 'to sue and be sued' in its official name." U.S. Postal Serv. v. Flamingo Indus. Ltd., 540 U.S. 736, 744 (2004) (quoting 39 U.S.C. § 401(1)). Accordingly, sovereign immunity does not present a bar to bringing an ADEA suit against the USPS or Potter.

## B. Substantive Cause of Action

Our inquiry does not end here. As the Supreme Court stated in Flamingo Industries, once we have determined that

-5-

sovereign immunity has been waived, we must proceed to determine whether "the substantive law in question is . . . intended to reach the federal entity." Id. Thus, we must determine whether Congress intended for the ADEA's prohibition on "discrimination based on age" to allow a plaintiff to bring a cause of action against the federal government for retaliation.

We begin with the plain text of § 633a; we "presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Section 633a(a) states: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." The text of § 633a clearly prohibits discrimination against federal employees (over forty years old) based on age, but says nothing that indicates that Congress meant for this provision to provide a cause of action for retaliation for filing an age-discrimination related complaint. The question is, did Congress mean "discrimination and retaliation" when it said "discrimination"?

The difference between these two causes of action is clear, and was recently explained in the context of Title VII by the Supreme Court in Burlington N. & Santa Fe Ry. v. White:

> The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status.

-6-

> The anti-retaliation provision seeks to secure
> that primary objective by preventing an
> employer from interfering (through
> retaliation) with an employee's efforts to
> secure or advance enforcement of the Act's
> basic guarantees. The substantive provision
> seeks to prevent injury to individuals based
> on who they are, i.e., their status. The
> anti-retaliation provision seeks to prevent
> harm to individuals based on what they do,
> i.e., their conduct.

126 S. Ct. 2405, 2412 (2006) (internal citations omitted). The clear difference between a cause of action for discrimination and a cause of action for retaliation leads to the conclusion that if Congress had meant to provide for both causes of action, it would have said so explicitly in § 633a.

Gómez responds that, notwithstanding the differences between discrimination and retaliation, the Court also recently held in Jackson v. Birmingham Bd. of Educ., that "when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." 544 U.S. 167, 174 (2005) (emphasis omitted). Gómez argues that the logic the Court used in Jackson to find that a retaliation cause of action could be implied from a statute which prohibited only "discrimination" is equally applicable to the ADEA: retaliation is an intentional act, it is discriminatory in that it treats the complainant differently than others, and it is discrimination "based on" age because the

nature of the complaint (for which the defendant is retaliating) is age discrimination.  Id. at 173-74.

We are not persuaded by this argument.  First, we note that in Jackson, the Court was interpreting a judicially-created cause of action that was implied from Title IX of the Civil Rights Act of 1964.  Id. at 173 (citing Cannon v. University of Chicago, 441 U.S. 677, 690-93 (1979)).  The Court is the primary entity involved in "defin[ing] the contours of that right of action." Jackson, 544 U.S. at 173.  Here, we are constrained by the fact that Congress explicitly created a statutory cause of action in § 633a, but did not include retaliation in that cause of action. The Court specifically noted this difference in Jackson when rejecting comparisons between Title IX and Title VII.  Id. at 175 ("Title IX is a broadly written general prohibition on discrimination . . . .  By contrast, Title VII spells out in greater detail the conduct that constitutes discrimination.").  In addition, the Supreme Court premised its holding in Jackson partially on the fact that Title IX prohibits discrimination in educational institutions, and that a retaliation cause of action would protect "teachers and coaches," who themselves were not the targets of discrimination, but who "are often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators."  Jackson, 544 U.S. at 181.  Outside of the

educational context, this is not necessarily true; employees such as Gómez can hardly argue that their co-workers are often in the best position to identify instances of age discrimination and bring it to the attention of supervisors. Finally, the Court stated in <u>Jackson</u> that Title IX was adopted in response to the Court's holding in <u>Sullivan</u> v. <u>Little Hunting Park, Inc.</u>, 396 U.S. 229 (1969), in which the Court upheld a cause of action for retaliation for speaking out against race discrimination. <u>Jackson</u>, 544 U.S. at 179-80. Here, there is no evidence in the legislative history that the ADEA's federal sector provisions were adopted in a similar context of claims by federal employees for retaliation for speaking out against age discrimination. <u>See</u>, <u>e.g.</u>, H.R. Rep. 93-913 (1974), <u>as reprinted in</u> 1974 U.S.C.C.A.N. 2811, 2850 (stating only that "[t]he committee expects that expanded coverage under the [ADEA] will remove discriminatory barriers against employment of older workers in government jobs"). Thus, neither the nature of the statute interpreted nor the policies discussed in <u>Jackson</u> justify extending its holding to the ADEA.

We also consider the legislative structure in determining congressional intent. <u>See</u> <u>Doe</u> v. <u>Boston Pub. Schs.</u>, 358 F.3d 20, 26 (1st Cir. 2004). We begin by noting that 29 U.S.C. § 623(d), the parallel ADEA provision governing private employers, does provide an explicit cause of action for retaliation:

> It shall be unlawful for an employer to discriminate against any of his employees

> . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Chapter.

No equivalent provision exists for federal employees. We generally presume that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, . . . Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (internal citation and quotation marks omitted); see also Nowd v. Rubin, 76 F.3d 25, 27-28 (1st Cir. 1996). The absence of statutory language providing a claim for retaliation in § 633a, when compared with the explicit prohibition on retaliation in § 623(d), further supports the conclusion that Congress intended for the ADEA to prohibit retaliation by private employers, but not by federal employers.

Gómez responds that the D.C. Circuit, in Forman v. Small, found that the difference between the private and public sector provisions was not dispositive.[1] 271 F.3d 285, 296 (D.C. Cir. 2001) The D.C. Circuit suggested that it would be "difficult to

---

[1] The issue in Forman was not whether § 633a included a substantive cause of action for retaliation, but rather whether sovereign immunity had been waived. 271 F.3d at 296. However, as a precursor to finding a waiver of sovereign immunity in § 633a, the D.C. Circuit found that § 633a provided for a retaliation cause of action.

imagine how a workplace could be 'free from any discrimination based on age' if, in response to an age discrimination claim, a federal employer could fire or take other action that was adverse to an employee."  Id. at 297.  As such, they concluded that "[n]othing in the plain language of § 633a suggests that Congress intended the federal workplace to be less free of age discrimination than the private workplace."  Id.

We must respectfully disagree with our brethren on the D.C. Circuit.  First, we note that the proper inquiry is not whether the statute shows that Congress intended to limit the scope of § 633a, but rather whether Congress intended to provide for a retaliation cause of action in § 633a in the first place.  See Iverson v. City of Boston, 452 F.3d 94, 100 (1st Cir. 2006) ("[A] private right of action may be conceived only by a statute that clearly evinces congressional intent to bestow such a right.").  Furthermore, although Forman relied heavily on the Supreme Court's holding in Lehman v. Nakshian, 453 U.S. 156 (1981), Lehman expressly adopted the reasoning we apply here, that "Congress . . . demonstrated that it knew how to provide a statutory right . . . when it wished to do so elsewhere in the very 'legislation cited.'"  Id. at 162.  Finally, we disagree with the D.C. Circuit's conclusion in Forman that the similarities between the provisions affecting federal employees in the ADEA and Title VII justify a finding that § 633a contains a retaliation provision.  Although we

-11-

acknowledge that § 633a is "patterned directly after § 717 (a) and (b) of the Civil Rights Act of 1964," Lehman, 453 U.S. at 167 n.15, we see a significant difference between the two statutes. In Title VII, Congress intended for 42 U.S.C. § 2000e-16, the provision applicable to federal employees, to incorporate the provisions applicable to the private sector, including the private-sector anti-retaliation provision. See, e.g., Ayon v. Sampson, 547 F.2d 446, 450 (9th Cir. 1976) ("[I]t is clear that Congress incorporated the [private-sector] protections against retaliation in its enactment of § 2000e-16."). In stark contrast, the provisions of the ADEA that apply to federal employees state that "[a]ny personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this Chapter." 29 U.S.C. § 633a(f). The court in Forman stated that § 633a(f) presents "somewhat of a red herring." 271 F.3d at 298. However, we generally engage the presumption that statutes do not contain surplusage. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 126 S. Ct. 2455, 2460 (2006). Here, it is quite easy to see why Congress might have included § 633a(f) in the ADEA: it did not want the expansive private-sector provisions of the ADEA extended to federal employees. See, e.g., Lehman, 453 U.S. at 162 (finding that Congress did not intend for § 626(c), which provides for jury trials in private-sector age discrimination suits, to apply to

federal employees); id. at 168 ("[Section 633a(f)] clearly emphasized that [§ 633a] was self-contained and unaffected by other sections, including those governing procedures applicable in actions against private employers"); Nowd, 76 F.3d at 28 (deciding that § 626(b), which provides for the recovery of attorneys fees in private-sector age discrimination suits, does not apply to federal employees).

Accordingly, we decide that Congress did not intend for 29 U.S.C. § 633a to include a cause of action for retaliation as the result of having filed an age-discrimination related complaint. Because Gómez had no cause of action under § 633a for retaliation against the USPS or Potter, the district court properly dismissed her complaint.

## III. **Conclusion**

For the foregoing reasons, we affirm the judgment of the district court.

**Affirmed**.