(Slip Opinion)     OCTOBER TERM, 2007     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GOMEZ-PEREZ *v.* POTTER, POSTMASTER GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 06–1321.   Argued February 19, 2008—Decided May 27, 2008

Petitioner, a 45-year-old postal worker, filed suit claiming that her employer had violated the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. §633a(a)—which requires that "[a]ll personnel actions affecting employees . . . at least 40 years of age . . . be made free from any discrimination based on age"—by subjecting her to various forms of retaliation after she filed an administrative ADEA complaint.  The District Court granted respondent summary judgment.  The First Circuit affirmed on the ground that §633a(a)'s prohibition of "discrimination based on age" does not cover retaliation.

*Held:* Section 633a(a) prohibits retaliation against a federal employee who complains of age discrimination.  Pp. 3–16.

   (a) In so concluding, the Court follows the reasoning of two prior decisions ruling that retaliation is covered by similar language in other antidiscrimination statutes.  First, in *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229, 237, the Court held that a retaliation claim could be brought under 42 U. S. C. §1982, which provides that "[a]ll citizens . . . shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property."  While §1982 does not use the phrase "discrimination based on race," that is its plain meaning.  See, *e.g., Jackson* v. *Birmingham Bd. of Ed.*, 544 U. S. 167, 177.  Second, the *Jackson* Court, *id.,* at 173–174, relied on *Sullivan* in holding that Title IX of the Education Amendments of 1972, 20 U. S. C. §1681(a), which prohibits "discrimination" "on the basis of sex" in educational programs receiving federal aid, reached retaliation against a public school teacher for complaining about sex discrimination in his school's athletic program.  544 U. S., at 176–177.  The ADEA language at issue

("discrimination based on age") is not materially different from the language at issue in *Jackson* and is the functional equivalent of the language at issue in *Sullivan*, see *Jackson*, *supra,* at 177. And the context in which the statutory language appears is the same in all three cases: remedial provisions aimed at prohibiting discrimination. Respondent neither asks the Court to overrule *Sullivan* or *Jackson* nor questions those decisions' reasoning, and the Government, both in *Jackson* and in *CBOCS West, Inc.* v. *Humphries*, *ante,* p. ___, has specifically urged the Court to follow *Sullivan*'s reasoning. Pp. 3–6.

  (b) The three grounds on which the First Circuit sought to distinguish *Jackson* in support of the Circuit's perception that there is a clear difference between causes of action for discrimination and for retaliation are not persuasive. Pp. 6–9.

    (1) The Circuit places too much reliance on the fact that the ADEA expressly creates a private right of action, whereas the right of action under Title IX, the statute at issue in *Jackson*, is implied and not express, see *Cannon* v. *University of Chicago*, 441 U. S. 677. The assertion that this distinction allowed the *Jackson* Court greater leeway to adopt an expansive interpretation of Title IX improperly conflates the analytically distinct questions whether a statute confers a private right of action and whether the statute's substantive prohibition reaches a particular form of conduct. Moreover, confusing these questions would lead to exceedingly strange results. For example, Title IX's prohibition of " discrimination" "on the basis of sex" either does or does not reach retaliation, and the presence or absence of another statutory provision expressly creating a private right of action cannot alter §1681(a)'s scope. Pp. 6–7.

    (2) Also unavailing is the Circuit's attempt to distinguish *Jackson* on the ground that retaliation claims play a more important role under Title IX than under the ADEA. This argument ignores the basis for *Jackson*, which did not hold that Title IX prohibits retaliation because such claims are important as a policy matter, but, instead, relied on an interpretation of the "text of Title IX." 544 U. S., at 173, 178. *Jackson*'s statement that "teachers . . . are often in the best position to vindicate [student] rights," *id.,* at 181, did not address the question whether the statutory term "discrimination" encompasses retaliation, but was made in response to the school board's argument that only a "victim of the discrimination," not third parties, should be allowed to assert a retaliation claim, *id.*, at 179–182. P. 8.

    (3) Finally, the Circuit's attempt to distinguish *Jackson* on the ground that Title IX was adopted in response to *Sullivan*, whereas there is no evidence in the ADEA's legislative history that §633a was adopted in a similar context, is rejected. *Jackson* did not identify any legislative history evidence, but merely observed that because "Con-

gress enacted Title IX just three years after *Sullivan,"* it was " 'realistic to presume that Congress was thoroughly familiar with *[Sullivan]* and . . . expected [Title IX] to be interpreted in conformity with [it]." 544 U. S., at 176. What *Jackson* said about the relationship between *Sullivan* and Title IX's enactment can also be said about the relationship between *Sullivan* and §633a's enactment, since the latter provision was enacted just five years after *Sullivan* was decided and two years after Title IX was enacted. Pp. 8–9.

(c) Respondent's other arguments supporting the contention that §633a(a) does not encompass retaliation claims are rejected. Pp. 10–16.

(1) Respondent places too much reliance on the presence of an ADEA provision specifically prohibiting retaliation against individuals complaining about private-sector age discrimination, §623(d), and the absence of a similar provision in §633a. Because §§623 and 633a were enacted seven years apart rather than simultaneously, see *Lindh* v. *Murphy*, 521 U. S. 320, 330, and because they are couched in very different terms—with §§623(a)(1)–(3) listing specific forbidden employer practices in contrast to §633a(a)'s broad prohibition of "discrimination"—the absence of a federal-sector provision similar to §623(d) does not provide a sufficient reason to depart from *Sullivan* and *Jackson*. Pp. 10–12.

(2) There is even less merit in respondent's reliance on §633a(f), which provides that personnel actions by a federal entity covered by §633a "shall not be subject to, or affected by, any provision of this chapter" other than §633a and §631(b), which restricts ADEA coverage to persons at least 40 years old. Respondent's contention that recognizing federal-sector retaliation claims would make §623(d) applicable to federal-sector employers in contravention of §633a(f) is unsound because the Court's holding today is not based on §623(d) but on §633a(a) itself, "unaffected by other [ADEA] sections," *Lehman* v. *Nakshian*, 453 U. S. 156, 168. P. 13.

(3) Also unavailing is respondent's argument that the history of congressional and Executive Branch responses to discrimination in federal employment demonstrates that when Congress enacted §633a, it anticipated that the pre-existing reprisal regulations of the Civil Service Commission (CSC) would be extended to cover federal-sector age discrimination and be the exclusive avenue for asserting retaliation claims. This argument is not supported by direct evidence, but rests on unsupported speculation, and, in any event, is self-contradictory in that, if §633a(a) does not confer an antiretaliation right, there is no reason to assume that Congress expected the CSC to issue new regulations prohibiting retaliation. Pp. 13–14.

(4) Respondent's final argument—that sovereign immunity prin-

Syllabus

ciples require that §633a(a) be read narrowly as prohibiting substantive age discrimination but not retaliation—is unpersuasive. The rule of construction requiring that "[a] waiver of the Federal Government's sovereign immunity . . . be unequivocally expressed in statutory text" and "strictly construed . . . in favor of the sovereign," *Lane* v. *Peña*, 518 U. S. 187, 192, is satisfied here by §633a(c), which unequivocally waives sovereign immunity for a claim brought by "[a]ny person aggrieved" by a §633a violation. Unlike §663a(c), §633a(a) is not a waiver of sovereign immunity; it is a substantive provision outlawing "discrimination." That the §633a(c) waiver applies to §633a(a) claims does not mean that §633a(a) must surmount the same high hurdle as §633a(c). Pp. 15–16.

476 F. 3d 54, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which STEVENS, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. ROBERTS, C. J., filed a dissenting opinion, in which SCALIA and THOMAS, JJ., joined as to all but Part I. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1321

## MYRNA GOMEZ-PEREZ, PETITIONER *v.* JOHN E. POTTER, POSTMASTER GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 27, 2008]

JUSTICE ALITO delivered the opinion of the Court.

The question before us is whether a federal employee who is a victim of retaliation due to the filing of a complaint of age discrimination may assert a claim under the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA), as added, 88 Stat. 74, and amended, 29  U. S. C. §633a(a) (2000 ed., Supp. V).  We hold that such a claim is authorized.

I

Petitioner Myrna Gómez-Pérez was a window distribution clerk for the United States Postal Service.  In October 2002, petitioner, then 45 years of age, was working full time at the Post Office in Dorado, Puerto Rico.  She requested a transfer to the Post Office in Moca, Puerto Rico, in order to be closer to her mother, who was ill.  The transfer was approved, and in November 2002, petitioner began working at the Moca Post Office in a part-time position.  Later that month, petitioner requested a transfer back to her old job at the Dorado Post Office, but her supervisor converted the Dorado position to part-time, filled it with

another employee, and denied petitioner's application.

After first filing an unsuccessful union grievance seeking a transfer back to her old job, petitioner filed a Postal Service equal employment opportunity age discrimination complaint.   According to petitioner, she was then subjected to various forms of retaliation.  Specifically, petitioner alleges that her supervisor called her into meetings during which groundless complaints were leveled at her, that her name was written on antisexual harassment posters, that she was falsely accused of sexual harassment, that her co-workers told her to "'go back'" to where she "'belong[ed],'" and that her work hours were drastically reduced.  476 F. 3d 54, 56 (CA1 2007).

Petitioner responded by filing this action in the United States District Court for the District of Puerto Rico, claiming, among other things, that respondent had violated the federal-sector provision of the ADEA, 29 U. S. C. §633a(a) (2000 ed., Supp. V), by retaliating against her for filing her equal employment opportunity age discrimination complaint.  Respondent moved for summary judgment, arguing that the United States has not waived sovereign immunity for ADEA retaliation claims and that the ADEA federal-sector provision does not reach retaliation.  The District Court granted summary judgment in favor of respondent on the basis of sovereign immunity.

On appeal, the United States Court of Appeals for the First Circuit held that the Postal Reorganization Act, 39 U. S. C. §401(1), unequivocally waived the Postal Service's sovereign immunity, see 476 F. 3d, at 54, 57, but the Court affirmed the decision of the District Court on the alternative ground that the federal-sector provision's prohibition of "discrimination based on age," §633a(a) (2000 ed., Supp. V), does not cover retaliation, *id.*, at 60, creating a split among the Courts of Appeals.  Compare *Forman* v. *Small*, 271 F. 3d 285, 296 (CADC 2001) (ADEA federal-sector provision covers retaliation).  We granted

certiorari. 552 U. S. \_\_\_ (2007).

## II

The federal-sector provision of the ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." §633a(a) (2000 ed., Supp. V). The key question in this case is whether the statutory phrase "discrimination based on age" includes retaliation based on the filing of an age discrimination complaint. We hold that it does.

In reaching this conclusion, we are guided by our prior decisions interpreting similar language in other antidiscrimination statutes. In *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229 (1969), we considered whether a claim of retaliation could be brought under Rev. Stat. §1978, 42 U. S. C. §1982, which provides that "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." While §1982 does not use the phrase "discrimination based on race," that is its plain meaning. See *Tennessee* v. *Lane*, 541 U. S. 509, 561 (2004) (SCALIA, J., dissenting) (describing §1982 as "banning public or private racial discrimination in the sale and rental of property"); *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409 (1968).

In *Sullivan*, a white man (Sullivan) held membership shares in a nonstock corporation that operated a park and playground for residents of the area in which he owned a home. Under the bylaws of the corporation, a member who leased a home in the area could assign a membership share in the corporation. But when Sullivan rented his house and attempted to assign a membership share to an African-American (Freeman), the corporation disallowed the assignment because of Freeman's race and subsequently expelled Sullivan from the corporation for protest-

ing that decision. Sullivan sued the corporation, and we held that his claim that he had been expelled "for the advocacy of Freeman's cause" was cognizable under §1982. 396 U. S., at 237. A contrary holding, we reasoned, would have allowed Sullivan to be "punished for trying to vindicate the rights of minorities" and would have given "impetus to the perpetuation of racial restrictions on property." *Ibid.*

More recently, in *Jackson* v. *Birmingham Bd. of Ed.*, 544 U. S. 167 (2005), we relied on *Sullivan* in interpreting Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U. S. C. §1681 *et seq.* (2000 ed. and Supp. V). Jackson, a public school teacher, sued his school board under Title IX, "alleging that the Board retaliated against him because he had complained about sex discrimination in the high school's athletic program." 544 U. S., at 171. Title IX provides in relevant part that "[n]o person in the United States shall, *on the basis of sex*, . . . be subjected to *discrimination* under any education program or activity receiving Federal financial assistance." §1681(a) (2000 ed.) (emphasis added). Holding that this provision prohibits retaliation, we wrote:

> "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination . . . . Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. We conclude that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Id.*, at 173–174 (citations omitted).

This interpretation, we found, flowed naturally from *Sullivan:* "Retaliation for Jackson's advocacy of the rights of the girls' basketball team in this case is 'discrimination' 'on the basis of sex,' just as retaliation for advocacy on behalf of a black lessee in *Sullivan* was discrimination on the basis of race." 544 U. S., at 176–177.

Following the reasoning of *Sullivan* and *Jackson*, we interpret the ADEA federal-sector provision's prohibition of "discrimination based on age" as likewise proscribing retaliation. The statutory language at issue here ("discrimination based on age") is not materially different from the language at issue in *Jackson* ("'discrimination'" "'on the basis of sex'") and is the functional equivalent of the language at issue in *Sullivan*, see *Jackson*, *supra,* at 177 (describing *Sullivan* as involving "discrimination on the basis of race"). And the context in which the statutory language appears is the same in all three cases; that is, all three cases involve remedial provisions aimed at prohibiting discrimination.

The *Jackson* dissent strenuously argued that a claim of retaliation is conceptually different from a claim of discrimination, see 544 U. S., at 184–185 (opinion of THOMAS, J.), but that view did not prevail.[1] And respondent in this case does not ask us to overrule *Sullivan* or *Jackson*. Nor does respondent question the reasoning of those decisions.

—————

[1] Suggesting that we have retreated from the reasoning of *Sullivan* and *Jackson*, THE CHIEF JUSTICE, citing *Burlington N. & S. F. R. Co.* v. *White*, 548 U. S. 53, 63–65 (2006), states that "we have since explained that antidiscrimination and antiretaliation provisions are indeed conceptually distinct, and serve distinct purposes." *Post*, at 4 (dissenting opinion). But as the Court explains today in *CBOCS West, Inc.* v. *Humphries*, *ante*, at 13, "[i]n *Burlington* . . . we used the status/conduct distinction to help explain why Congress might have wanted its explicit Title VII antiretaliation provision to sweep more broadly (*i.e.*, to include conduct *outside* the workplace) than its substantive Title VII (status-based ) antidiscrimination provision. *Burlington* did not suggest that Congress must separate the two in all events."

Indeed, in *Jackson*, the Government contended that "[t]he text . . . of Title IX demonstrate[s] that it encompasses protection against retaliation" since "retaliation against a person because that person has filed a sex discrimination complaint is a form of intentional sex discrimination." Brief for United States as *Amicus Curiae* 8, in *Jackson* v. *Birmingham Bd. of Ed.*, O. T. 2004, No. 02–1672. Similarly, in another case this Term, the Government has urged us to follow the reasoning of *Sullivan* and to hold that a claim of retaliation may be brought under Rev. Stat. §1977, 42 U. S. C. §1981. In that case, the Government argues that §1981's prohibition of "'discrimination' . . . quite naturally includes discrimination on account of having complained about discrimination." Brief for United States as *Amicus Curiae* 10, in *CBOCS West, Inc.* v. *Humphries*, O. T. 2007, No. 06–1431.

### III

The decision of the Court of Appeals, which respondent defends, perceived a "clear difference between a cause of action for discrimination and a cause of action for retaliation" and sought to distinguish *Jackson* on three grounds. 476 F. 3d, at 58–59. We are not persuaded, however, by any of these attempted distinctions.

### A

The Court of Appeals first relied on the fact that the ADEA expressly creates a private right of action whereas Title IX, the statute at issue in *Jackson*, does not. See 476 F. 3d, at 58. The Court of Appeals appears to have reasoned that, because the private right of action under Title IX is implied and not express, see *Cannon* v. *University of Chicago*, 441 U. S. 677 (1979), the *Jackson* Court had greater leeway to adopt an expansive interpretation of Title IX's prohibition of discrimination on the basis of sex.

This reasoning improperly conflates the question

whether a statute confers a private right of action with the question whether the statute's substantive prohibition reaches a particular form of conduct. These questions are analytically distinct, and confusing them would lead to exceedingly strange results.

For example, under the Court of Appeals' reasoning, Title IX's prohibition of "discrimination" "on the basis of sex," in 20 U. S. C. §1681(a), might have a narrower scope and might not reach retaliation if Title IX contained a provision expressly authorizing an aggrieved private party to bring suit to remedy a violation of §1681(a). We do not see how such a conclusion could be defended. Section 1681(a)'s prohibition of "discrimination" either does or does not reach retaliation, and the presence or absence of another statutory provision expressly creating a private right of action cannot alter §1681(a)'s scope. In addition, it would be perverse if the enactment of a provision explicitly creating a private right of action—a provision that, if anything, would tend to suggest that Congress perceived a need for a strong remedy—were taken as a justification for narrowing the scope of the underlying prohibition.

The Court of Appeals' reasoning also seems to lead to the strange conclusion that, despite *Jackson*'s holding that a private party may assert a retaliation claim under Title IX, the Federal Government might not be authorized to impose upon an entity that engages in retaliation the administrative remedies, including the termination of funding, that are expressly sanctioned under §1682. It would be extremely odd, however, if §1681(a) had a broader scope when enforced by a means not expressly sanctioned by statute than it does when enforced by the means that the statute explicitly provides. For these reasons, we reject the proposition that *Jackson* may be distinguished from the present case on the ground that Title IX's private right of action is implied.

B

The Court of Appeals next attempted to distinguish *Jackson* on the ground that retaliation claims play a more important role under Title IX than they do under the ADEA. The Court of Appeals pointed to our statement in *Jackson* that "'teachers and coaches . . . are often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators.'" 476 F. 3d, at 58 (quoting *Jackson*, 544 U. S., at 181). The Court of Appeals suggested that third parties are not needed to "identify instances of age discrimination and bring it to the attention of supervisors" and that, consequently, there is no need to extend §633a(a) (2000 ed., Supp. V) to reach retaliation. 476 F. 3d, at 58.

This argument ignores the basis for the decision in *Jackson*. *Jackson* did not hold that Title IX prohibits retaliation because the Court concluded as a policy matter that such claims are important. Instead, the holding in *Jackson* was based on an interpretation of the "text of Title IX." 544 U. S., at 173, 178.

Moreover, the statements in *Jackson* on which the Court of Appeals relied did not address the question whether the statutory term "discrimination" encompasses retaliation. Instead, those statements addressed the school board's argument that, even if Title IX was held to permit some retaliation claims, only a "victim of the discrimination"—and not third parties—should be allowed to assert such a claim. *Id.*, at 179–182. It was in response to this argument that the Court noted the particular importance of reports of Title IX violations by third parties such as teachers and coaches. *Id.*, at 181.

C

Finally, the Court of Appeals attempted to distinguish *Jackson* on the ground that "Title IX was adopted in re-

sponse to the Court's holding in *Sullivan*," whereas "there is no evidence in the legislative history that the ADEA's federal sector provisions were adopted in a similar context." 476 F. 3d, at 58–59. *Jackson*'s reliance on *Sullivan*, however, did not stem from "evidence in the legislative history" of Title IX. *Jackson* did not identify any such evidence but merely observed that "Congress enacted Title IX just three years after *Sullivan* was decided." 544 U. S., at 176. Due to this chronology, the Court concluded, it was "'not only appropriate but also realistic to presume that Congress was thoroughly familiar with *[Sullivan]* and that it expected its enactment [of Title IX] to be interpreted in conformity with [it]." *Ibid.* (quoting *Cannon*, 441 U. S., at 699). See also 544 U. S., at 176 ("Title IX was enacted in 1972, three years after *[Sullivan]*"); *id.*, at 179–180 ("*Sullivan* . . . formed an important part of the backdrop against which Congress enacted Title IX").

What *Jackson* said about the relationship between *Sullivan* and the enactment of Title IX can be said as well about the relationship between *Sullivan* and the enactment of the ADEA's federal-sector provision, 29 U. S. C. §633a (2000 ed. and Supp. V). *Sullivan* was decided in 1969 and §633a was enacted in 1974—five years after the decision in *Sullivan* and two years after the enactment of Title IX. We see no reason to think that Congress forgot about *Sullivan* during the two years that passed between the enactment of Title IX in 1972 and the enactment of §633a in 1974. And if, as *Jackson* presumed, Congress had *Sullivan* in mind when it enacted Title IX in 1972, it is "appropriate" and "realistic" to presume that Congress expected its prohibition of "discrimination based on age" in §633a(a) "'to be interpreted in conformity with'" its similarly worded prohibition of "discrimination" "on the basis of sex" in 20 U. S. C. §1681(a), which it had enacted just two years earlier. 544 U. S., at 176 (quoting *Cannon*, *supra*, at 699).

## IV

### A

In arguing that §633a(a) (2000 ed., Supp. V) does not encompass retaliation claims, respondent relies principally on the presence of a provision in the ADEA specifically prohibiting retaliation against individuals who complain about age discrimination in the private sector, §623(d), and the absence of a similar provision specifically prohibiting retaliation against individuals who complain about age discrimination in federal employment. According to respondent, "the strong presumption is that [the] omission reflects that Congress acted intentionally and purposely in including such language in Section 623 of the Act and excluding it from Section 633a." Brief for Respondent 17 (internal quotation marks omitted).

"[N]egative implications raised by disparate provisions are strongest" in those instances in which the relevant statutory provisions were "considered simultaneously when the language raising the implication was inserted." *Lindh* v. *Murphy*, 521 U. S. 320, 330 (1997). Here, the two relevant provisions were not considered or enacted together. Section 623(d), which specifically prohibits private sector retaliation, was enacted in 1967, see §4(d), 81 Stat. 603, but the federal-sector provision, §633a, was not added until 1974, see §28(b)(2), 88 Stat. 74.[2]

Respondent's argument is also undermined by the fact that the prohibitory language in the ADEA's federal-sector provision differs sharply from that in the corresponding

_____

[2] The situation here is quite different from that which we faced in *Lehman* v. *Nakshian*, 453 U. S. 156 (1981), where both the private and federal-sector provisions of the ADEA already existed and a single piece of legislation—the 1978 amendments to the ADEA—added a provision conferring a jury-trial right for private-sector ADEA suits but failed to include any similar provision for federal-sector suits. See Age Discrimination in Employment Act Amendments of 1978, §4(a)(2), 92 Stat. 189.

ADEA provision relating to private-sector employment. In the private-sector provision, Congress set out a specific list of forbidden employer practices. See 29 U. S. C. §623(a).[3] The omission from such a list of a specific prohibition of retaliation might have been interpreted as suggesting that Congress did not want to reach retaliation, and therefore Congress had reason to include a specific prohibition of retaliation, §623(d), in order to dispel any such inference.

The ADEA federal-sector provision, however, was not modeled after §623(d) and is couched in very different terms. The ADEA federal-sector provision was patterned "directly after" Title VII's federal-sector discrimination ban. *Lehman* v. *Nakshian*, 453 U. S. 156, 167, n. 15 (1981). Like the ADEA's federal-sector provision, Title VII's federal-sector provision, contains a broad prohibition of "discrimination," rather than a list of specific prohibited practices. Compare 118 Stat. 814, as amended, 42 U. S. C. §2000(e)–16(a) (2000 ed., Supp. V) (personnel actions affecting federal employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin") with 29 U. S. C. §633a(a) (2000 ed., Supp. V) (personnel actions affecting federal employees who are at least 40 years of age "shall be made free from any discrimination based on age"). And like the ADEA's federal-

_____

[3] Section 623(a) provides:

"(a) Employer practices

"It shall be unlawful for an employer—

   "(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

   "(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

   "(3) to reduce the wage rate of any employee in order to comply with this chapter."

sector provision, Title VII's federal-sector provision incorporates certain private-sector provisions but does not incorporate the provision prohibiting retaliation in the private sector. See 42 U. S. C. §2000e–16(d) (incorporating §§2000e–5(f) to (k) but not §2000e–3(a), which forbids private-sector retaliation).[4]

When Congress decided not to pattern 29 U. S. C. §633a(a) after §623(a) but instead to enact a broad, general ban on "discrimination based on age," Congress was presumably familiar with *Sullivan* and had reason to expect that this ban would be interpreted "in conformity" with that precedent. *Jackson*, 544 U. S., at 176. Under the reasoning of *Sullivan*, retaliation for complaining about age discrimination, is "discrimination based on age," "just as retaliation for advocacy on behalf of [the] black lessee in *Sullivan* was discrimination on the basis of race." *Id.*, at 176–177. Thus, because §§623(d) and 633a were enacted separately and are couched in very different terms, the absence of a federal-sector provision similar to §623(d) does not provide a sufficient reason to depart from the reasoning of *Sullivan* and *Jackson*.[5]

––––––––––

[4] While the federal-sector provision of Title VII does not incorporate §2000e–3(a), the federal-sector provision of Title VII does incorporate a remedial provision, §2000e–5(g)(2)(A), that authorizes relief for a violation of §2000–3(a). Petitioner argues that this remedial provision shows that Congress meant for the Title VII federal-sector provision's broad prohibition of "discrimination based on race, color, religion, sex, or national origin" to reach retaliation because otherwise there would be no provision banning retaliation in the federal sector and thus no way in which relief for retaliation could be awarded. Brief for Petitioner 20. The Federal Government, however, has declined to take a position on the question whether Title VII bans retaliation in federal employment, see Tr. of Oral Arg. 31, and that issue is not before us in this case.

[5] The Government's theory that the absence of a provision specifically banning federal-sector retaliation gives rise to the inference that §633a(a) (2000 ed., Supp. V) does not ban retaliation would lead logically to the strange conclusion that §633a(a) also does not forbid age-

### B

We see even less merit in respondent's reliance on 29 U. S. C. §633a(f), which provides that personnel actions by a federal department, agency, or other entity covered by §633a "shall not be subject to, or affected by, any provision of this chapter" other than §§633a and 631(b), the provision that restricts the coverage of the ADEA to persons who are at least 40 years of age. Respondent contends that recognizing federal-sector retaliation claims would be tantamount to making §623(d) applicable to federal-sector employers and would thus contravene §633a(f).

This argument is unsound because our holding that the ADEA prohibits retaliation against federal-sector employees is not in any way based on §623(d). Our conclusion, instead, is based squarely on §633a(a) (2000 ed., Supp. V) itself, "unaffected by other sections" of the Act. *Lehman*, *supra*, at 168.

### C

Respondent next advances a complicated argument concerning "[t]he history of congressional and executive branch responses to the problem of discrimination in federal employment." Brief for Respondent 27. After Title VII was made applicable to federal employment in 1972, see Equal Employment Act, §11, 86 Stat. 111, the Civil Service Commission issued new regulations that prohibited discrimination in federal employment based on race, color, religion, sex, and national origin (but not age), see 5 CFR §713.211 (1973), as well as "reprisal[s]" prompted by complaints about such discrimination, §713.262(a). When Congress enacted the ADEA's federal-sector provisions in 1974, respondent argues, Congress anticipated that the enactment of §633a would prompt the Civil Service Com-

---

discriminatory job notices and advertisements because §633a(a), unlike §623(e) (2000 ed.), fails to mention such practices expressly.

mission to "extend its existing reprisal regulations" to cover age discrimination complaints and that Congress intended for the civil service process to provide the exclusive avenue for asserting retaliation claims. Brief for Respondent 27, 33, and n. 7. Respondent suggests that Congress took this approach because it believed that the Civil Service regulations "reflect[ed] a distinct set of public policy concerns in the civil service sector." *Id.*, at 27.

Respondent cites no direct evidence that Congress actually took this approach;[6] respondent's argument rests on nothing more than unsupported speculation. And, in any event, respondent's argument contradicts itself. If, as respondent maintains, "[s]ection 633a(a) does not confer an anti-retaliation right," *id.,* at 9, then there is no reason to assume that Congress expected the Civil Service Commission to respond to the enactment of §633a(a) by issuing new regulations prohibiting retaliation. On the contrary, if, as respondent maintains, Congress had declined to provide an antiretaliation right, then Congress presumably would have expected the Civil Service Commission to abide by that policy choice.

———————

[6] Respondent asks us to infer that §633a(a) (2000 ed., Sup. V) does not proscribe retaliation because, when Congress made the ADEA applicable to the Federal Government, Congress did not simply subject the Federal Government to the ADEA's private-employment provisions by amending the definition of "employer" to include the United States. Respondent contends that a similar inference may be drawn from the fact that in 1974 Congress added to the Fair Labor Standards Act of 1938 (FLSA) a provision specifically making it unlawful to retaliate against an employee for attempting to vindicate FLSA rights. See §215(a)(3). These arguments fail to appreciate the significance of §633a(a)'s broad prohibition of "discrimination based on age." Because Congress had good reason to expect that this broad ban would be interpreted in the same way that *Sullivan* v. *Little Hunting Park, Inc.,* 392 U. S. 657 (1968), had interpreted the broad ban on racial discrimination in 42 U. S. C. §1982, the inference that respondent asks us to draw is unfounded.

D

Respondent's final argument is that principles of sovereign immunity "require that Section 633a(a) be read narrowly as prohibiting substantive age discrimination, but not retaliation." *Id.,* at 44. Respondent contends that the broad waiver of sovereign immunity in the Postal Reorganization Act, 39 U. S. C. §401(1), is beside the point for present purposes because, for many federal agencies, the only provision that waives sovereign immunity for ADEA claims is contained in §633a, and therefore this waiver provision "must be construed strictly in favor of the sovereign." Brief for Respondent 44 (quoting *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992); internal quotation marks omitted).

Respondent is of course correct that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane* v. *Peña*, 518 U. S. 187, 192 (1996). But this rule of construction is satisfied here. Subsection (c) of §633a unequivocally waives sovereign immunity for a claim brought by "[a]ny person aggrieved" to remedy a violation of §633a. Unlike §663a(c), §633a(a) (2000 ed., Supp. V) is not a waiver of sovereign immunity; it is a substantive provision outlawing "discrimination." That the waiver in §633a(c) applies to §633a(a) claims does not mean that §633a(a) must surmount the same high hurdle as §633a(c). See *United States* v. *White Mountain Apache Tribe*, 537 U. S. 465, 472–473 (2003) (where one statutory provision unequivocally provides for a waiver of sovereign immunity to enforce a separate statutory provision, that latter provision "'need not . . . be construed in the manner appropriate to waivers of sovereign immunity'" (quoting *United States* v. *Mitchell*, 463 U. S. 206, 218–219 (1983))). But in any event, even if §633a(a) must be construed in the same manner as §633a(c), we hold, for the reasons

previously explained, that §633a(a) prohibits retaliation with the requisite clarity.

\*    \*    \*

For these reasons, we hold that §633a(a) prohibits retaliation against a federal employee who complains of age discrimination. The judgment of the Court of Appeals is reversed, and this case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 06–1321

MYRNA GOMEZ-PEREZ, PETITIONER *v.* JOHN E. POTTER, POSTMASTER GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 27, 2008]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA and JUSTICE THOMAS join as to all but Part I, dissenting.

The Court today holds that the federal-sector provision of the Age Discrimination in Employment Act encompasses not only claims of age discrimination—which its language expressly provides—but also claims of retaliation for complaining about age discrimination—which its language does not. Protection against discrimination may include protection against retaliation for complaining about discrimination, but that is not always the case. The separate treatment of each in the private-sector provision of the ADEA makes that clear. In my view, the statutory language and structure, as well as the fact that Congress has always protected federal employees from retaliation through the established civil service process, confirm that Congress did not intend those employees to have a separate judicial remedy for retaliation under the ADEA. I respectfully dissent.

## I

Congress enacted the Age Discrimination in Employment Act of 1967, 81 Stat. 602, which at the time applied only to private employers, with the purpose of "promot[ing] employment of older persons based on their ability rather than age; . . . [of] prohibit[ing] arbitrary age

discrimination in employment; [and of] help[ing] employ-
ers and workers find ways of meeting problems arising
from the impact of age on employment." 29 U. S. C.
§621(b). The 1967 Act implemented this purpose in two
principal ways. First, the statute made it unlawful for an
employer to "discriminate against any individual . . .
because of such individual's age." §623(a)(1). Second,
Congress enacted a specific antiretaliation provision,
which made it "unlawful for an employer to discriminate
against any of his employees or applicants for employment
. . . because such individual . . . has opposed any practice
made unlawful by this section, or because such individual
. . . has made a charge, testified, assisted, or participated
in any manner in an investigation, proceeding, or litiga-
tion under" the ADEA. §623(d).

In the Fair Labor Standards Amendments of 1974
(FLSA Amendments), §28(b)(2), 88 Stat. 74, Congress
(among other things) extended the ADEA to most Execu-
tive Branch employees by adopting 29 U. S. C. §633a.
Like its private-sector counterpart, this federal-sector
provision includes a ban on discrimination on the basis of
age. Unlike its private-sector counterpart, the federal-
sector provision does *not* include a separate ban on retalia-
tion. The federal-sector provision specifies only that "[a]ll
personnel actions affecting employees or applicants for
employment who are at least 40 years of age [in various
federal agencies] shall be made free from any discrimina-
tion based on age." §633a(a).

Despite the absence of an express retaliation provision
in §633a(a), the Court finds that the statute encompasses
both discrimination and retaliation claims. To support
this proposition, the Court principally relies on our deci-
sions in *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S.
229 (1969), and *Jackson* v. *Birmingham Bd. of Ed.*, 544
U. S. 167 (2005). In my view, the majority reads these
cases for more than they are worth.

ROBERTS, C. J., dissenting

As the majority correctly states, we held in *Sullivan* that 42 U. S. C. §1982, which prohibits race discrimination in the sale or rental of property, also provides a cause of action for retaliation.[1]  396 U. S., at 237.  More recently, we held in *Jackson* that Title IX of the Education Amendments of 1972, 86 Stat. 373—which provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U. S. C. §1681(a)—encompasses claims of retaliation for complaints about sex discrimination.  544 U. S., at 173–174.

To the extent the majority takes from these precedents the principle that broad antidiscrimination provisions may also encompass an antiretaliation component, I do not disagree.  That is why I am able to join today's opinion in *CBOCS West, Inc.* v. *Humphries, ante*, at 14 (holding that a retaliation claim is cognizable under 42 U. S. C. §1981).  But it cannot be—contrary to the majority's apparent view—that *any* time Congress proscribes "discrimination based on X," it means to proscribe retaliation as well.  That is clear from the private-sector provision of the ADEA, which includes a ban on "discriminat[ion] against any individual . . . because of such individual's age," 29 U. S. C. §623(a)(1), but *also* includes a separate (and presumably not superfluous) ban on retaliation, §623(d).

Indeed, we made this precise observation in *Jackson*

———————

[1] To the extent there was any disagreement about whether *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229 (1969), was really a retaliation case, or whether it dealt only with third-party standing, the view put forth by the Court won the day in *Jackson* v. *Birmingham Bd. of Ed.*, 544 U. S. 167 (2005).  Compare *id.*, at 176, and n. 1, with *id.*, at 194 (THOMAS, J., dissenting).  Whatever the merits of this disagreement, I accept *Jackson*'s (and the Court's) interpretation as a matter of *stare decisis*.  See *CBOCS West, Inc.* v. *Humphries, ante*, at 3.

itself. The respondent in that case argued that Title IX's
ban on discrimination could not include a cause of action
for retaliation because Title VII of the Civil Rights Act of
1964, like the private-sector provision of the ADEA, in-
cludes discrete discrimination and retaliation provisions.
See 42 U. S. C. §§2000e–2 (discrimination), 2000e–3 (re-
taliation). We distinguished Title VII on the ground that
"Title IX is a broadly written general prohibition on dis-
crimination," while "Title VII spells out in greater detail
the conduct that constitutes discrimination in violation of
that statute." 544 U. S., at 175. Thus, while we distin-
guished Title VII from Title IX in *Jackson*, we also ac-
knowledged that not every express ban on discrimination
must be read as a ban on retaliation as well.

What is more, although the majority asserts that *Jack-
son* rejected the view that "a claim of retaliation is concep-
tually different from a claim of discrimination," *ante*, at 5,
we have since explained that antidiscrimination and
antiretaliation provisions are indeed conceptually distinct,
and serve distinct purposes. In *Burlington N. & S. F. R.
Co.* v. *White*, 548 U. S. 53 (2006), we considered whether
the antiretaliation provision in the Title VII private-sector
provision, 42 U. S. C. §2000e–3(a)—which is materially
indistinguishable from that in the ADEA—applies "only
[to] those employer actions and resulting harms that are
related to employment or the workplace." 548 U. S., at 61.
In answering that question in the negative, we explained:

> "The antidiscrimination provision seeks a workplace
> where individuals are not discriminated against be-
> cause of their [protected] status. The antiretaliation
> provision seeks to secure that primary objective by
> preventing an employer from interfering (through re-
> taliation) with an employee's efforts to secure or ad-
> vance enforcement of the Act's basic guarantees. The
> substantive provision seeks to prevent injury to indi-

viduals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Id.*, at 63 (citation omitted).[2]

While I take from *Sullivan* and *Jackson* the proposition that broad bans on discrimination, standing alone, may be read to include a retaliation component, the provision at issue here does not stand alone. And, as *Jackson* itself makes clear, see 544 U. S., at 173, 175, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989). Here the text and structure of the statute, the broader statutory scheme of which it is a part, and distinctions between federal- and private-sector employment convince me that §633a(a) does not provide a cause of action for retaliation.

## II

We have explained that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (internal quotation marks omitted). If, as the majority holds, the ban on "discrimina-

---

[2] The Court views this discussion of *Burlington* as "[s]uggesting that [the Court has] retreated from the reasoning of *Sullivan* and *Jackson*." *Ante*, at 5, n. 1. Not a bit. The discussion simply points out what *Burlington* plainly said: that there is a distinction between discrimination and retaliation claims. That does not mean Congress cannot address both in the same provision, as we held it did in *Sullivan* and *Jackson* and as we hold today it did in *CBOCS West, Inc., ante*, at 14. But it does confirm that Congress may choose to separate the two, as the private-sector provision of the ADEA, as well as the portion of Title VII interpreted in *Burlington*, makes clear.

tion based on age" in §633a(a) encompasses both discrimination and retaliation claims, it is difficult to understand why Congress would have felt the need to specify in §623 separate prohibitions against *both* "discriminat[ion]" "because of [an] individual's age," *and* retaliation.

The majority responds by noting that "'[n]egative implications raised by disparate provisions are strongest' in those instances in which the relevant statutory provisions were 'considered simultaneously when the language raising the implication was inserted.'" *Ante*, at 10 (quoting *Lindh* v. *Murphy*, 521 U. S. 320, 330 (1997)). Here, the majority notes that §623 was enacted in 1967, while §633a was not passed until 1974. *Ante*, at 10. Fair enough, but while I do not quarrel with this principle as a general matter, I do not think it does the work the majority thinks it does. Congress obviously had the private-sector ADEA provision prominently before it when it enacted §633a, because the same bill that included §633a also amended the private-sector provision. See, *e.g.,* §28(a)(2), 88 Stat. 74 (amending the definition of "employer" in 29 U. S. C. §630(b) to include States and their political subdivisions). Indeed, it is quite odd to assume, as the majority does, see *ante*, at 9, 12, that the Congress that enacted §633a was aware of and relied upon our decision in *Sullivan*—which interpreted 42 U. S. C. §1982, a wholly unrelated provision—but was not attuned to its own work reflected in the differences between 29 U. S. C. §§623 and 633a. Even if the negative implication to be drawn from those differences may not be at its "strongest" under these circumstances, it is certainly strong enough.

Moreover, and more to the point, we have relied on the differences in language between the federal- and private-sector provisions of the ADEA specifically in our interpretation of §633a. In *Lehman* v. *Nakshian*, 453 U. S. 156 (1981), we faced the question whether a person bringing an action under §633a(c), alleging a violation of §633a(a),

was entitled to a trial by jury.  In holding that there was no jury-trial right available against the Federal Government, we relied on the fact that while the ADEA's federal-sector provision did not include a provision for a jury trial, the analogous grant of a right of action in the private-sector provision, §626(c), "*expressly* provides for jury trials." *Id.,* at 162.  We reasoned that "Congress accordingly demonstrated that it knew how to provide a statutory right to a jury trial when it wished to do so elsewhere in the very 'legislation cited.' . . . But in [§633a(c)] it failed explicitly to do so." *Ibid.* (quoting *Galloway* v. *United States*, 319 U. S. 372, 389 (1943)).  So too here.  "Congress . . . demonstrated that it knew how to" provide a retaliation cause of action "when it wished to do so elsewhere in the very 'legislation cited,'" but "failed explicitly to do so" in §633a(a).

The majority argues that this inference is weakened by the fact that, in "the private-sector provision, Congress set out a specific list of forbidden employer practices," *ante*, at 11, while §633a(a) is a "broad, general ban on 'discrimination based on age,'" *ante*, at 12.  This point cuts against the majority.  Section 623 drew a distinction between prohibited "employer practices" that discriminate based on age, and retaliation.  See §§623(a) (discriminatory "[e]mployer practices"), 623(d) (retaliation).  Section 633a(a) phrased the prohibited discrimination in terms of "personnel actions."  Just as Congress did not regard retaliation as included within "employer practices," but dealt with it separately in §623(d), the counterpart to "employer practices" in §633a—discriminatory "personnel actions"—should similarly not be read to include retaliation.

The argument that some meaning ought to attach to Congress's inclusion of an antiretaliation provision in §623 but not in §633a is further supported by several other factors.  To begin with, Congress *expressly* made clear that the ADEA's private-sector provisions should not apply to

their federal-sector counterpart, by providing that "[a]ny personnel action . . . referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of" the ADEA, except for one provision not relevant here. §633a(f). The majority sees no "merit in respondent's reliance on 29 U. S. C. §633a(f)." *Ante*, at 13. But again, we relied on this very provision in *Lehman.* We explained that this subsection "clearly emphasize[s] that [§633a] was self-contained and unaffected by other sections" of the ADEA, 453 U. S., at 168, a fact that we used to support our holding that the federal-sector provision does not provide a right to a jury trial, even though the private-sector provision does. In short, Congress was aware that there were significant differences between the private- and federal-sector portions of the ADEA, and specified that no part of the former should be understood to have been implicitly imported into the latter.

Other actions Congress took at the same time that it enacted §633a in 1974 further underscore the point that Congress deliberately chose to exclude retaliation claims from the ADEA's federal-sector provision. The Fair Labor Standards Amendments of 1974, as the Act's name suggests, dealt for the most part not with the ADEA, but with the Fair Labor Standards Act of 1938, extending that statute's protections to federal employees. See FLSA Amendments, §6(a)(2), 88 Stat. 58. In doing so, Congress explicitly subjected federal employers to the FLSA's express antiretaliation provision, 29 U. S. C. §215(a)(3). Congress did *not* similarly subject the Federal Government to the express antiretaliation provision in the ADEA, strongly suggesting that this was a conscious choice.

The majority responds that this "inference . . . is un-founded" because "Congress had good reason to expect that this broad ban would be interpreted in the same way that *Sullivan* . . . had interpreted the broad ban on racial discrimination in 42 U. S. C. §1982." *Ante*, at 14, n. 6.

Anything is possible, but again, it seems far more likely that Congress had its eye on the private-sector provision of the ADEA in crafting the federal one, rather than on one of our precedents on a different statute. See *supra*, at 6.

But whatever the merits of this argument, it does not rebut the import of other probative provisions of the FLSA Amendments. In particular, Congress specifically chose in the FLSA Amendments to treat States and the Federal Government differently with respect to the ADEA itself. It subjected the former to the ADEA's private-sector provision, see FLSA Amendments, §28(a)(2), 88 Stat. 74— including the express prohibition against retaliation in §623(d)—while creating §633a as a stand-alone prohibition against discrimination in federal employment, without an antiretaliation provision, see §28(b)(2), *ibid.* This decision evinces a deliberate legislative choice *not* to extend those portions of the ADEA's private-sector provisions that are not expressly included in §633a, as of course Congress specified in §633a(f).

Given all this, it seems safe to say that the text and structure of the statute strongly support the proposition that Congress did not intend to include a cause of action for retaliation against federal employees in §633a(a).

## III

But *why* would Congress allow retaliation suits against private-sector and state employers, but not against the Federal Government? The answer is that such retaliation was dealt with not through a judicial remedy, but rather the way retaliation in the federal workplace was typically addressed—through the established civil service system, with its comprehensive protection for Government workers. Congress was quite familiar with that detailed administrative system—one that already existed for most federal employees, but not for private ones. This approach, unlike the Court's, is consistent with the fact that

Congress has recognized that regulation of the civil service is a complex issue, requiring "careful attention to conflicting policy considerations" and "balancing governmental efficiency and the rights of employees," *Bush* v. *Lucas*, 462 U. S. 367, 388, 389 (1983). The resulting system often requires remedies different from those found to be appropriate for the private sector (or even for the States).

A

Before Title VII was extended to federal employees in 1972, discrimination in federal employment on the basis of race, color, religion, sex, or national origin was prohibited by executive order. See Exec. Order No. 11478, 34 Fed. Reg. 12985 (1969). Civil service regulations implemented this policy by authorizing Executive Branch employees to bring administrative complaints for allegedly discriminatory acts, including "personnel action[s]," 5 CFR §§713.211, 713.214(a)(1)(i) (1972). These regulations further provided that such complainants, their representatives, and witnesses "shall be free from restraint, interference, coercion, discrimination, or reprisal" for their involvement in the complaint process. §§713.214(b) (complainants and representatives), 713.218(e) (witnesses).

The Civil Service Commission (CSC) promulgated a detailed scheme through which federal employees could vindicate these rights, including the express antiretaliation protections. More serious personnel actions, known as "adverse actions," could be challenged before the employing agency and appealed to the CSC, see §§713.219(a) and (b), 752.203, 771.202, 771.208, 771.222, while less serious personnel actions and "any [other] matter of concern or dissatisfaction" could be challenged under alternative procedures that were also appealable to the CSC, see §§713.217(b), 713.218, 713.219(a) and (c), 713.231(a), 771.302(a). Retaliation was proscribed in all events. See,

*e.g.*, §§713.219(a) and (c) (incorporating Part 771 antiretaliation provisions to complaint procedures except certain appeals to CSC); §§771.105(a)(1) and (b)(1), 771.211(e) (antiretaliation provisions for CSC appeals).

In 1972, Congress applied Title VII to the federal-sector, Equal Employment Opportunity Act of 1972 (EEO Act), §11, 86 Stat. 111, mandating that "[a]ll personnel actions" with respect to federal employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U. S. C. §2000e–16(a). Congress empowered the CSC "to enforce the provisions of subsection (a) through appropriate remedies," and to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." §2000e–16(b).

Under this grant of authority, as well as its prior authority under statute and executive order, the CSC revised its regulations both "to implement the [EEO Act] and to strengthen the system of complaint processing." 37 Fed. Reg. 22717 (1972) (Part 713 Subpart B). As with its prior system of administrative enforcement, the CSC distinguished between "complaints of discrimination on grounds of race, color, religion, sex, or national origin," 5 CFR §713.211 (1973), on the one hand, and charges by a "complainant, his representative, or a witness who alleges restraint, interference, coercion, discrimination, or reprisal in connection with the presentation of a complaint," §713.262(a), on the other. The regulations imposed upon employing agencies the obligation of "timely investigation and resolution of complaints including complaints of coercion and reprisal," 37 Fed. Reg. 22717; see also 5 CFR §713.220, and made clear the procedures for processing retaliation claims, §§713.261, 713.262. The regulations further mandated that the CSC "require the [employing] agency to take whatever action is appropriate" with respect to allegations of retaliation if the agency itself has

"not completed an appropriate inquiry," §713.262(b)(1).

Thus, leading up to the enactment of 29 U. S. C. §633a in 1974, the CSC's comprehensive regulatory scheme set forth a broadly applicable remedy for retaliation against federal employees for filing complaints or otherwise participating in the EEO process. And when Congress empowered the CSC in 1974 to "enforce the provisions of [§633a(a)] through appropriate remedies," and to "issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities" under that statute, §28(b)(2), 88 Stat. 75, the assumption that Congress expected the CSC to create an administrative antiretaliation remedy, just as it had for complaints of discrimination under Title VII, is compelling. And sure enough, the CSC did just that promptly after §633a was enacted. See 39 Fed. Reg. 24351 (1974); 5 CFR §713.511 (1975).

Given this history of addressing retaliation through administrative means, combined with the complicated nature (relative to the private sector) of federal personnel practices, it is therefore by no means anomalous that Congress would have dealt with the "primary objective" of combating age discrimination through a judicial remedy, *Burlington*, 548 U. S., at 63, but left it to expert administrators used to dealing with personnel matters in the federal work force to "secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," *ibid.*

### B

The majority discounts the above argument as "unsupported speculation." *Ante*, at 14. It seems to me that the fact that the Executive Branch had always treated discrimination and retaliation as distinct, and that it enacted administrative remedies for retaliation almost immedi-

ately after the passage of the Title VII and ADEA federal-sector provisions, provide plenty of support. But even if the majority is right, the view that Congress intended to treat retaliation for age discrimination complaints as a problem to be dealt with primarily through administrative procedures, rather than through the judicial process in the first instance, is confirmed by Congress's passage of the Civil Service Reform Act of 1978 (CSRA), 92 Stat. 1111.

The CSRA, as amended, has a detailed comprehensive antiretaliation provision, which generally makes it unlawful for Executive Branch employers to

> "take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of . . . (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation [or] (B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)." 5 U. S. C. §2302(b)(9).[3]

This antiretaliation provision, which plainly applies to retaliation for exercising rights under the civil rights statutes, including the ADEA, is supported by a host of administrative remedies. If the alleged retaliation results in adverse actions such as removal, suspension for more than 14 days, or reduction in pay, see §7512, an appeal can be taken directly to the Merit Systems Protection Board (MSPB), §§7513(d), 7701, with judicial review in the United States Court of Appeals for the Federal Circuit,

_____

[3] Neither 29 U. S. C. §633a nor the CSRA cover employees of Congress or of the Executive Office of the President and Executive Residence of the White House. See §633a(a); 5 U. S. C. §2302(a)(2)(B). But Congress has expressly extended the protections of the ADEA to such employees, 2 U. S. C. §1311(a)(2) (Congress); 3 U. S. C. §411(a)(2) (White House), and provided them with an express retaliation remedy, 2 U. S. C. §1317; 3 U. S. C. §417(a).

§7703(b)(1). Retaliation claims based on less serious allegations are first investigated by the Office of Special Counsel. If the Office finds that there are reasonable grounds supporting the retaliation charge, it must report its determination to, and may seek corrective action from, the MSPB. §§1214(a)(1)(A), (b)(2)(B), (C), and 1214(c). Again, judicial review in the Federal Circuit is available. §7703(b)(1). In all events, upon a finding that retaliation has in fact occurred, the MSPB has the authority to order corrective action, §§1214(b)(4), 7701(b)(2), to order attorney's fees on appeal, §7701(g), and to discipline federal employees responsible for retaliatory acts, §1215.[4]

To be sure, the CSRA was enacted after §633a. Nevertheless, we have explained, in the same context of federal employee remedies, that the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *United States* v. *Fausto*, 484 U. S. 439, 453 (1988). That is precisely the situation here.

Indeed, this is particularly true with respect to Congress's regulation of federal employment. We have explained that the CSRA is an "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.*, at 445. Perhaps the CSRA's "civil service remedies [are] not as effective as an individual damages remedy" that can be obtained in federal court, *Bush*, 462 U. S., at 372, or perhaps a quicker and more familiar administrative remedy *is* more effective as a practical

———————
[4] The Postal Service—Gomez-Perez's employer—operates under its own personnel system. But the Postal Service's Employee and Labor Relations Manual (ELM) prohibits "any action, event, or course of conduct that . . . subjects any person to reprisal for prior involvement in EEO activity." ELM §665.23, pp. 681–682 (June 2007).

matter. That is not the issue. Cf. *id.*, at 388 (the question whether a judicial remedy against a federal employer for a First Amendment violation should be implied "obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff"). The CSRA establishes an "elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." *Id.*, at 385. Retaliation as a general matter was already addressed for federal employees. I would not read into §633a a judicial remedy for retaliation when Congress—which has "developed considerable familiarity with balancing governmental efficiency and the rights of employees," *id.*, at 389—chose to provide a detailed administrative one.

\*     \*     \*

The question whether a ban against "discrimination based on" a protected status such as age can also be read to encompass a ban on retaliation can be answered only after careful scrutiny of the particular provision in question. In this case, an analysis of the statutory language of §633a and the broader scheme of which it is a part confirms that Congress did not intend implicitly to create a judicial remedy for retaliation against federal employees, when it did so expressly for private-sector employees. Congress was not sloppy in creating this distinction; it did so for good reason: because the federal workplace is governed by comprehensive regulation, of which Congress was well aware, while the private sector is not.

For these reasons, I would affirm the judgment of the Court of Appeals.

# SUPREME COURT OF THE UNITED STATES

No. 06–1321

MYRNA GOMEZ-PEREZ, PETITIONER *v.* JOHN E. POTTER, POSTMASTER GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 27, 2008]

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

I join all but Part I of THE CHIEF JUSTICE's dissent. I write separately to reiterate my view that *Jackson* v. *Birmingham Bd. of Ed.*, 544 U. S. 167 (2005), incorrectly conflated the concepts of retaliation and discrimination. The text of the federal-sector provision of the Age Discrimination in Employment Act of 1967 is clear: It prohibits only "discrimination based on age." 29 U. S. C. §633a(a) (2000 ed., Supp. V). If retaliation is not "discrimination on the basis of sex," *Jackson*, *supra,* at 185 (THOMAS, J., dissenting), or "discrimination based on race," *CBOCS West, Inc.* v. *Humphries*, *ante,* at 4 (THOMAS, J., dissenting), it is certainly not "discrimination based on age." Because §633a(a) provides no basis for implying a private right of action for retaliation claims, and its context only reaffirms its plain meaning, see *ante,* at 5–9 (opinion of ROBERTS, C. J.), I would affirm the judgment below.