NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-1826

———————

KEITH ULLRICH,
Appellant,

v.

UNITED STATES SECRETARY
OF VETERANS AFFAIRS

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:09-cv-1605)
District Judge: Honorable A. Richard Caputo

———————

Submitted Under Third Circuit LAR 34.1(a)
December 9, 2011

———————

Before: HARDIMAN, BARRY, *Circuit Judges*,
and RUFE,* *District Judge*

(Filed: January 10, 2012)

———————

OPINION OF THE COURT

———————

*The Honorable Cynthia M. Rufe, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.
RUFE, *District Judge*.

This is an employment discrimination case brought under the federal sector provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–16, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a. Keith Ullrich appeals the March 8, 2011 Order of the District Court for the Middle District of Pennsylvania granting summary judgment in favor of Ullrich's employer, the United States Secretary of Veterans Affairs ("the VA"). For the reasons that follow, we affirm the District Court's order granting summary judgment in favor of the VA.

## I.

Because we write primarily for the benefit of the parties, we recite only those facts which are essential to our analysis; these facts are undisputed unless otherwise noted.

Appellant, Keith Ullrich, has been employed by the Wilkes-Barre Veterans Affairs Medical Center ("VAMC") as the Safety and Occupational Health Manager since 1993. Ullrich is the biological father and partial physical custodian of a minor daughter, whose mother, Judith O'Leary, is also an employee of the Wilkes-Barre VAMC. At the time of the incidents in question, there was in effect a 2007 Wyoming County, Pennsylvania, Court of Common Pleas custody order ("Custody Order") specifying that "neither party shall take their daughter to their place of employment, except to an event sanctioned by said employer." (Supp. App. 52.)

1

On the morning of January 6, 2009, Ullrich took his daughter to school, only to discover that the school was closed due to inclement weather. Ullrich called his immediate supervisor Cassandra Davis, Chief of Facilities Management at the VAMC, and asked permission to bring his daughter into work until his parents could pick her up and take her home. Davis gave Ullrich permission to bring his daughter to the VAMC, and he did so for a brief period of time. Later that day, O'Leary complained to VAMC police sergeant Ted Gabriel that Ullrich had violated the Custody Order by bringing their daughter to work. On or about January 7th or 8th, Mark Donnelly, Chief of VAMC Police, questioned Ullrich about the incident and the Custody Order. Donnelly maintains that Ullrich told him there was no such order in effect. (Supp. App. 27, ¶¶ 10-12.) Ullrich insists that, contrary to Donnelly's recollection, he admitted to Donnelly that there was a Custody Order.

At some point toward the end of January or the beginning of February, O'Leary contacted Janice Boss, Director of the VAMC, to complain that Ullrich had violated the Custody Order by bringing their daughter to work, and that the VAMC was "aiding and abetting" Ullrich in violating the Order. (Supp. App. 47-48, ¶ 5.) Boss attests that she had known about the Custody Order when it was issued in 2007, but had forgotten the Order existed. (Supp. App. 48, ¶¶ 6-7.) In response to O'Leary's complaint, Boss spoke to Donnelly, who reported that Ullrich had denied there was such an order. Troubled by what seemed to be Ullrich's dishonesty, Boss met with Ullrich and his supervisor Davis to ask if Ullrich had told Donnelly about the Order; Ullrich replied that he had. Boss asked Davis to look into the matter further, to determine whether Ullrich had, in fact, lied

2

to Donnelly. Davis met with Ullrich and again asked if he had concealed the Custody Order from Donnelly; Ullrich apparently responded, "No. Mark knows all about it," (Supp. App. 32, ¶ 13.) Davis then spoke to Donnelly, who confirmed that Ullrich had denied the existence of the Order during their January conversation. Davis spoke twice more to Ullrich, who continued to insist that he had told Donnelly about the Order. Davis attests that, after speaking to all involved, she believed Donnelly's version of events rather than Ullrich's. Davis and Boss then consulted the VAMC's Labor Relations/Employee Relations Section to determine whether and how Ullrich should be disciplined. On March 13, 2009, Davis proposed that Ullrich receive a five-day suspension without pay for "lack of candor when answering questions regarding whether or not a court order existed prohibiting bringing your daughter onto the Wilkes-Barre VAMC premises." (Supp. App. 37-38.)

Ullrich was given the opportunity to respond to the proposed suspension, and he did so in a lengthy letter, maintaining that he had been entirely candid with Donnelly, Davis and Boss about the Custody Order. In addition, Ullrich questioned the VAMC's right to interfere in a civil custody matter and suggested that the investigation and proposed suspension was part of a larger management agenda to harass him and other employees "who have recently filed formal EEO actions against VAMC Management and against [Ms. Davis] specifically." (Supp. App. 42.) Shortly thereafter, Ullrich's attorney also responded to the proposed suspension by letter, reiterating his client's position that the investigation and disciplinary action were unfounded, were taken against

3

Ullrich with a discriminatory purpose, and constituted harassment. On April 23, 2009, Davis suspended Ullrich for five days without pay for "lack of candor."

Ullrich filed a civil action in the District Court for the Middle District of Pennsylvania on August 19, 2009, asserting claims under Title VII and the ADEA for sex and age discrimination, retaliation for prior protected EEO activity, and hostile work environment. After what appears to have been very limited discovery, the VA filed a motion for summary judgment on January 3, 2011, which the District Court granted on March 8, 2011.

As an initial matter, the District Court held that Ullrich had failed to counter the VA's Statement of Material Undisputed Facts in the manner required by Middle District of Pennsylvania Local Rule of Civil Procedure 56.1, and deemed the VA's version of the facts admitted for purposes of the summary judgment motion. The District Court then held that Ullrich had (1) failed to establish a *prima facie* case of age or sex discrimination because he put forth no evidence giving rise to an inference of discrimination; and (2) failed to make out a *prima facie* case of retaliation because he put forth no evidence establishing a causal connection between his suspension and any protected activity. The District Court further held that, even assuming Ullrich had made out a *prima facie* case of discrimination or retaliation, he had produced no evidence of pretext with which to challenge the VA's proffered legitimate non-discriminatory reason for his suspension. Finally, the District Court held that Ullrich had failed to present evidence of discrimination or harassment severe or pervasive enough to state a claim for hostile work environment.

4

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary; therefore, we apply the same standard as the District Court to determine whether summary judgment is appropriate. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009) (citing *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008)). We generally give deference to a district court's interpretation of its own local rules. *Gov't of V.I. v. Mills*, 634 F.3d 746, 750 (3d Cir. 2011).

## III.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] A disputed fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[1] The District Court cited an earlier version of Federal Rule of Civil Procedure 56, which stated that summary judgment was appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2) (2010). Amendments to Rule 56 effective December 1, 2010, changed the operative language slightly, to require a "genuine dispute as to any material fact," but these amendments did not alter the standard for granting summary judgment. *See* Fed. R. Civ. P. 56, Advisory Comm. Note (2010 Amendments).

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Nonetheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

A plaintiff's mere belief or contention that he was subject to discrimination is not enough to create a dispute of material fact sufficient to survive summary judgment. *See Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (holding that speculation is not sufficient to defeat a motion for summary judgment). As we have said before, "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

**IV.**

**A.     Middle District of Pennsylvania Local Rule 56.1**

First, we address Ullrich's contention that the District Court erred in deeming the facts contained in the VA's Statement of Material Undisputed Facts "admitted" pursuant to Middle District of Pennsylvania Local Rule 56.1 ("Local Rule 56.1"). Local Rule 56.1 provides that:

> A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [above], as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Although Ullrich filed a Response to the VA's Statement of Material Facts, in which he "admitted" or "denied" each numbered paragraph in the VA's Statement, he did not support his responses with any citations to the record. Consequently, the District Court held that Ullrich had "failed to adequately counter [the VA's Statement], as *per* Local Rule 56.1," and deemed the VA's facts admitted.

As we have noted in reviewing similar procedural rules in other district courts, such local rules are permissible so long as district courts do not use them to bypass the merits analysis required by Federal Rule of Civil Procedure 56. *Anchorage Assocs. v.*

7

*V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Federal Rule 56 explicitly requires the party asserting the absence or existence of a genuinely disputed fact to support that assertion by citing to specific parts of the record. Fed. R. Civ. P. 56(c)(1). A court may consider other materials in the record, but need only consider cited materials, Fed. R. Civ. P. 56(c)(3), and may consider undisputed any fact not properly addressed by the party opposing it. Fed. R. Civ. P. 56(e).

We agree with the District Court that Ullrich's response is woefully lacking in citations to the record (nor can we find any evidence that Ullrich attempted to expand the record beyond the VA's submissions with depositions or affidavits that support his own position) and fails to conform with Local Rule 56.1. But it is evident from the pleadings, the briefing and Ullrich's few supporting documents that Ullrich disputes that he lied to Donnelly about the existence of the Custody Order, disputes the VA's determination that he showed "lack of candor," and believes he was disciplined for discriminatory or retaliatory reasons. Although the District Court deemed the VA's facts admitted, it is apparent that the Court based its decision on all the evidence before it.

### B. Sex and Age Discrimination

Section 2000e–16 of Title VII, pertaining to nondiscrimination in federal government employment, provides that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16. In almost identical

8

language the ADEA prohibits employment discrimination based on age, for individuals over the age of forty. 29 U.S.C. § 633a.

The same evidentiary framework is used to evaluate claims of discrimination based upon sex and age. Where, as here, a plaintiff has adduced no direct evidence of discrimination based on his sex or age, the familiar *McDonnell Douglas* burden-shifting analysis is used to evaluate the claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995) ("ADEA and Title VII . . . serve the same purpose . . . . [t]herefore it follows that the methods and manner of proof under one statute should inform the standards under the other[] as well")).[2]

Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, the existence of which is "a question of law that must be decided by the court." *Wishkin*, 476 F.3d at 185. If a plaintiff establishes his *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. . . . The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (*per curiam*);

---

[2] The Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, ---, 129 S. Ct. 2343, 2349 n.2 (2009). However, we have already concluded that *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

9

*see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (*en banc*) (ADEA). A plaintiff may evince pretext, and so defeat a motion for summary judgment, by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

To establish a *prima facie* case of age or sex discrimination under a disparate treatment theory, a plaintiff must demonstrate that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).[3]

It is undisputed that Ullrich, who was over the age of forty when his suspension took place, is fully qualified for his position as Safety & Occupational Health Manager, and a five-day suspension without pay is an adverse employment action sufficient to satisfy the third requirement of a *prima facie* case. *See Weston v. Pennsylvania*, 251 F.3d

---

[3] Discrimination might be inferred, for example, from the fact that a similarly situated employee who was not within the protected class was treated more favorably, *see, e.g., Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (Title VII), or in an ADEA case, that a plaintiff's replacement was sufficiently younger to permit a reasonable inference of age discrimination. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006).

420, 430 (3d Cir. 2001). But we agree with the District Court that nothing in the record suggests that Ullrich's age or gender played the slightest role in his suspension.[4]

We also agree with the District Court that Ullrich has offered no evidence to discredit the VA's reason for investigating and suspending him. Even assuming Ullrich was truthful in his conversations with Donnelly, Boss, and Davis, it is not enough for Ullrich to show that the VA's decision was wrong or mistaken, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (citations and quotation marks omitted). Ullrich has demonstrated no such discrepancies here.

### C. Retaliation

Title VII and the ADEA protect employees who attempt to exercise the rights guaranteed by the Act against retaliation by employers. 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d).[5] To establish a *prima facie* case of retaliation, a plaintiff must show

---

[4] After diligent perusal of the record, the Court can find only a single allegation related to gender, which appears nowhere in Ullrich's pleading or briefing, but rather in his lawyer's EEOC Notice of Intent to Sue, explaining that Ullrich's claim of discrimination is based on the fact that he is "male with all female supervisors." (App. 22.)

[5] The federal-sector provisions of Title VII and the ADEA do not explicitly ban retaliation; however, the Supreme Court has held that § 633a(a) prohibits retaliation

11

that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *Weston*, 251 F.3d at 430. Activities protected from retaliation include opposing any practice made unlawful by Title VII or the ADEA; making a charge of employment discrimination; or testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or the ADEA. *See* 42 U.S.C. § 2000e–3(a). A plaintiff may establish the requisite causal link between the protected activity and the retaliatory act by, for example, showing "temporal proximity" or a pattern of ongoing antagonism sufficient to give rise to an inference of retaliation. *Jensen*, 435 F.3d at 450; *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

Ullrich argues repeatedly that he was disciplined not for "lack of candor," but in retaliation for filing an earlier EEOC complaint against Ms. Davis and the VAMC. However, other than Davis's admission that, "in the past," Ullrich had filed an EEO claim against her for another disciplinary matter (Supp. App. 30, ¶ 4), neither the record nor the pleadings provide any information regarding the outcome of that complaint, claims made or parties named therein, on what incident the complaint was based, or even a ballpark estimate of the date on which the complaint was filed. The District Court held that Ullrich failed to establish the requisite causal connection. We agree. The fact that

against a federal employee who complains of age discrimination. *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). The Court declined to address whether Title VII similarly bans retaliation in federal employment, *id.* at 488 n.4, but we have generally assumed it does. *See Jensen v. Potter*, 435 F.3d 444, 449-50 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006).

Ullrich filed another EEOC complaint at some unspecified point prior to the incidents underlying this action is insufficient evidence, from which no reasonable factfinder could determine that Ullrich's suspension was causally connected to earlier protected activity.

### D.      Hostile Work Environment

In *Bonenberger v. Plymouth Township*, 132 F.3d 20 (3d Cir. 1997), we set forth the following requirements for proving a hostile work environment claim in a sex discrimination case under Title VII: "(1) the employee suffered intentional discrimination because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability."[6] *Id.* at 25 (quotation omitted). Here, the District Court held that the VA's actions in investigating and suspending Ullrich did not support a hostile work environment claim. We agree.

To fall within the purview of Title VII, the conduct in question must be severe and pervasive enough to create an environment the employee subjectively perceives as abusive or hostile, and an "objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In determining whether an environment is hostile or

---

[6] Assuming without deciding that hostile work environment claims are cognizable under the federal-sector provisions of Title VII and the ADEA, similar requirements apply. *See, e.g., Jensen*, 435 F.3d at 448-52 (Title VII); *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (ADEA).

13

abusive, a court looks to a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Ullrich points only to incidents related to the Custody Order investigation and suspension as proof of harassment and hostile work environment. These incidents appear to include (1) generally, being subject to an investigation Ullrich believes was unwarranted; (2) being questioned once by Chief Donnelly, once by Ms. Davis and Ms. Boss, and three times by Ms. Davis alone; (3) receiving the proposed suspension; and (4) ultimately, being suspended for five days without pay. We cannot conclude that these incidents—however unpleasant and embarrassing—constitute conduct that a reasonable person would find sufficiently abusive to support a hostile work environment claim.

More importantly, Title VII protects a plaintiff only as to harassment based on discrimination against a protected class. "Many may suffer severe or pervasive harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Jensen*, 435 F.3d at 449. Because nothing in the record suggests that Ullrich was the victim of sex or age discrimination, he cannot show the type of discriminatory conduct required to establish a hostile work environment under Title VII or the ADEA.

14

## V.

For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of the VA.