**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ANDREW J. SIEFRING,
           Appellant,

      v.

DEPARTMENT OF JUSTICE,
           Agency.

DOCKET NUMBER
CH-0752-20-0509-I-1

DATE: July 9, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Ross A. Nabatoff, Esquire, Washington, D.C., for the appellant.

Cedric Bullock, Esquire, Sean Lee, Esquire, and Susan E. Gibson, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### REMAND ORDER

The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which mitigated the appellant's removal to a 30-day suspension. For the reasons discussed below, we DENY the petition for review, GRANT the cross petition for review, VACATE the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision, and REMAND for further adjudication of the appellant's claim of retaliation for protected equal employment opportunity (EEO) activity.

## BACKGROUND

Prior to his removal, the appellant was a Deputy U.S. Marshal (DUSM), GS-1811-12, with the U.S. Marshals Service (USMS) for the Southern District of Ohio in Dayton, Ohio. Initial Appeal File (IAF), Tab 19 at 8. By notice dated July 15, 2019, the agency proposed to remove the appellant on the following charges: Lack of Candor; Conduct Unbecoming a DUSM (4 specifications); Poor Judgment; Failure to Follow USMS Policy; and Failure to Timely Report Misconduct. IAF, Tab 35 at 110-23. The appellant responded orally and in writing, and on December 11, 2019, the agency issued a decision letter sustaining the proposed removal. IAF, Tab 19 at 9-16. The deciding official did not sustain the charge of Poor Judgment, but otherwise sustained all charges and specifications set forth in the proposal notice. *Id*. at 9-13. The appellant was removed effective December 13, 2019. *Id*. at 8.

The appellant filed an EEO complaint contesting his removal, and on July 9, 2020, the agency issued a final agency decision finding no discrimination. IAF, Tab 3 at 13-26. The appellant then filed a timely appeal with the Board, raising affirmative defenses of denial of due process, harmful procedural error, retaliation for EEO activity, and whistleblowing reprisal. IAF, Tabs 1, 7.

Following a hearing, the administrative judge issued an initial decision mitigating the removal penalty to a 30-day suspension. IAF, Tab 81, Initial Decision (ID). In doing so, the administrative judge sustained specifications 1 and 3 of Conduct Unbecoming a DUSM, as well as the charge of Failure to Follow Policy, but found that the agency failed to establish the charge of Failure to Timely Report Misconduct or specifications 2 and 4 of the Conduct Unbecoming charge. ID at 2-16. The administrative judge further found that the appellant failed to establish any of his affirmative defenses. ID at 16-28. Finally,

the administrative judge conducted a *Douglas* factors[2] analysis and concluded that a 30-day suspension was the maximum reasonable penalty for the sustained misconduct. ID at 29-31. The administrative judge further ordered the agency to provide interim relief in the event a petition for review was filed. ID at 32-33.

The agency has filed a petition for review, arguing that the administrative judge should have sustained the charge of Lack of Candor and found that removal was a reasonable penalty for the appellant's misconduct.[3] Petition for Review (PFR) File, Tab 1. The agency certified that it had complied with the interim relief order by reinstating the appellant to his former position, effective July 20, 2021. *Id*. at 13. The appellant has filed a response to the agency's petition, followed by his own cross petition for review. PFR File, Tabs 3-4. In his cross petition, the appellant argues that the administrative judge erred in sustaining the charge of Failure to Follow Policy and specifications 1 and 3 of Conduct Unbecoming a DUSM. PFR File, Tab 4 at 5-7, 8-19. The appellant further argues that, contrary to the initial decision, he established his claim of EEO retaliation by a preponderance of the evidence.[4] *Id*. at 8, 20-26. The agency has filed a response to the appellant's cross petition, and the appellant has replied to that response. PFR File, Tabs 9-10. The appellant has also filed a supplemental pleading, styled as a "petition for enforcement" of the interim relief order. PFR File, Tab 6. The agency has filed a response to that pleading, and the appellant has replied. PFR File, Tabs 7-8.

---

[2] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors that are relevant in assessing the appropriate penalty for an act of misconduct.

[3] The agency does not contest the administrative judge's findings with respect to the charge of Failure to Timely Report Misconduct or specifications 2 and 4 of Conduct Unbecoming a DUSM. Accordingly, we do not address those matters further.

[4] The appellant does not contest the administrative judge's findings with respect to his other affirmative defenses.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant's petition for enforcement is denied.</u>

The appellant's petition for enforcement is denied because the Board's regulations do not allow for a petition for enforcement of an interim relief order. *Bryant v. Department of the Army*, 2022 MSPB 1, ¶ 6; *see* 5 C.F.R. § 1201.182(a) (providing for petitions for review of final Board orders). We have instead considered the appellant's pleading as a challenge to the agency's certification of compliance. *See Bryant*, 2022 MSPB 1, ¶ 6; 5 C.F.R. § 1201.116(b). However, given our decision to deny the agency's petition for review on the merits, we find it unnecessary to decide the interim relief issue. *See Jolivette v. Department of the Navy*, 100 M.S.P.R. 216, ¶ 5 n.1 (2005). The appellant's arguments in this regard are now moot because interim relief is in effect only pending the disposition of a petition for review. *See* 5 U.S.C. § 7701(b)(2)(A); *Garcia v. Department of State*, 106 M.S.P.R. 583, ¶ 7 (2007).

<u>The agency failed to prove the charge of Lack of Candor.</u>

To prove a charge of lack of candor, the agency must prove that (1) the appellant gave incorrect or incomplete statements, and (2) did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶17 (2016). Unlike falsification, lack of candor does not require an intent to deceive. *Id.*, ¶ 16. A lack of candor charge may involve a failure to disclose something that, under the circumstances, should have been disclosed in order to make the given statement accurate and complete. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002).

Here, the agency alleges that the appellant displayed lack of candor when, on or about October 26, 2017, he failed to accurately respond to a Colorado Parks and Wildlife Officer regarding the appellant's shooting of a spike elk, which took place 4 days previously. IAF, Tab 35 at 110. It is undisputed that the appellant had an elk hunting license that permitted him to shoot a spike elk with antlers less than five inches long, and that the elk's antlers exceeded that length, thus making

the kill illegal.[5]  Regarding the size and type of the elk, the record reflects that the appellant informed the officer that he had shot a spike elk, indicated that the elk's antler was approximately half the length of the appellant's shoe, and later estimated the length of the antler using his hands.  Hearing Transcript (HT), Day 1 at 11-12, 19 (officer's testimony).  As both estimates indicated a length of greater than five inches, we conclude the appellant did not conceal that the length of the spike elk's antlers exceeded the legal limit.  Regarding the agency's contention that the appellant had photographs of the animal that he should have shared with the officer, nothing in the record indicates that any such photos were in his possession at the time of the conversation.  Accordingly, we agree with the administrative judge that the agency failed to show that the appellant knowingly gave the officer false information or concealed information that should have been disclosed under the circumstances.  The agency's arguments to the contrary amount to mere disagreement with the administrative judge's findings and credibility determinations, and do not warrant further review.  *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The agency failed to prove the charge of Conduct Unbecoming a DUSM.

To prove a charge of conduct unbecoming, the agency must show that the charged conduct occurred, and that the conduct was improper, unsuitable, or detracted from the appellant's character or reputation.  *See Miles v. Department of the Army*, 55 M.S.P.R. 633, 637 (1992).  Ordinarily, intent is not an element of this offense.  *King v. Frazier*, 77 F.3d 1361, 1363 (Fed. Cir. 1996).  However, in its specifications, the agency may incorporate an element of intent by claiming

---

[5] The officer testified that he believed the appellant accidentally shot the wrong animal, and the agency does not allege otherwise.  Hearing Transcript, Day 1 at 21.  Whether the appellant timely reported the unlawful shooting is not at issue in this charge.

that the employee engaged in intentional misconduct or that the conduct was improper because of the employee's intent. *Crouse v. Department of the Treasury*, 75 M.S.P.R. 57, 63 (1997). If the agency does so, it must prove the employee's intent as an essential element of the charge. *Id*. at 64 (finding that, when the agency specified that the employee's discussion with a coworker was unacceptable and inappropriate because he intended to persuade her into not cooperating with an investigation, the agency was required to prove that the appellant intended to impede the investigation).

*Specification 1*

We agree with the appellant that specification 1, as crafted by the agency, incorporates an element of intent. The underlying narrative set forth in the proposal notice[6] states that the appellant "intentionally recorded [SDUSM R.] covertly and without his permission on one or more occasions" and "made a conscious decision not to erase the conversation." IAF, Tab 35 at 112. Furthermore, in sustaining the specification, the deciding official stated that he found the appellant's conduct to be "intentional, repeated, and with malicious intentions," and that he "purposely arranged" to record the conversations "in order to benefit [his] own personal interests." IAF, Tab 19 at 10. Given the structure of the proposal notice and decision letter, it is apparent that the agency did not view the appellant's intent as merely an aggravating factor, but rather as the gravamen of the alleged misconduct.

The Board has held that the advice of reputable counsel given on full disclosure of facts and followed in good faith may rebut the mental element essential to the particular offense. *See Gillis v. U.S. Postal Service*, 24 M.S.P.R. 642, 645 (1984). In this case, the appellant was advised by his counsel that recording the conversation was protected EEO activity, regardless of any agency policy to the contrary. IAF, Tab 19 at 63. Because the specification at issue

---

[6] The narrative concerns both specification 1 and specification 2, the latter of which was not sustained.

involves an element of intent, we find that the administrative judge should not have discounted that fact. ID at 7; IAF, Tab 38 at 92. We instead conclude that, in light of the advice provided by his attorney—correct or not—the appellant did not act with malicious intent in recording the conversation. Accordingly, we do not sustain the specification.

*Specification 3*

Under the third specification, the agency alleged that, on approximately March 14, 2017, the appellant displayed conduct unbecoming when he argued with SDUSM R. about taking a prisoner to the hospital. IAF, Tab 35 at 113. As with specification 1, we find that the alleged misconduct incorporates an element of intent. The proposal notice states that, according to SDUSM R.'s statement, the appellant "attempted to bait him into an argument," and that another witness averred that, in his opinion, the appellant was "just trying to push [SDUSM R.'s] buttons." *Id*. The narrative in the decision letter further states that the appellant "purposefully instigated" the argument, and that his behavior was "intentional and a way to incite a less than harmonious working environment." IAF, Tab 19 at 11. Given the language of the specification, we conclude that the agency must establish that the appellant's intention was to provoke his supervisor. *See Crouse*, 75 M.S.P.R. at 63. However, considering that the appellant subsequently called 911 and accompanied the prisoner to the hospital, we find it more likely that his insistence was instead motivated by his belief, justified or not, that the prisoner was in pain and required additional medical attention.[7] Accordingly, we

---

[7] In sustaining this specification, the administrative judge cited "[the appellant's] insistence despite contrary or at least conflicting evidence that the prisoner required no further medical attention, and his defiance of [the] direction [of] his supervisor on how to take the prisoner back to the hospital." ID at 11. However, whether the appellant was correct or reasonable in believing that the prisoner required medical attention is not relevant to the alleged misconduct at issue. It is also irrelevant whether the appellant's decision to call 911 was contrary to his supervisor's instruction to either take the prisoner to the hospital himself or have the arresting agents do so. The appellant was not charged with insubordination or failure to follow instructions. *See Fargnoli v. Department of Commerce*, 123 M.S.P.R. 333, ¶ 7 (2016) (holding that the Board is

do not sustain the specification. As the agency failed to establish any of the underlying specifications, we do not sustain the charge of Conduct Unbecoming a DUSM.

The agency failed to prove the charge of Failure to Follow Policy.

In this charge, the agency alleged that the appellant failed to follow USMS policy while transporting the prisoner from the hospital back to a custody facility in another DUSM's unscreened Government-owned vehicle. IAF, Tab 35 at 115-16. Specifically, the agency asserts that the appellant violated USMS policy by sitting in the passenger seat instead of sitting in the back next to the prisoner. *Id.* The supporting narrative explicitly cites and relies upon USMS Policy Directive 9.21, In-District Prisoner Movements, section E.1.c, which sets forth the procedures for transporting USMS prisoners in an unscreened vehicle. *Id.* at 116. The first paragraph of the section provides that no more than two prisoners may be transported in an unscreened vehicle, and paragraph (2) goes on to state the following requirement, which the proposal notice identified as the "pertinent part" of the policy:

> Prisoner No. 1 will be seated in the right rear with prisoner No. 2 seated in the middle rear. An unarmed deputy will ride in the left rear seat behind the driver.

IAF, Tab 35 at 116, Tab 59 at 26.

The appellant contends that the policy applies to the transport of two prisoners and does not specify where the officer riding in the car should sit while transporting a single prisoner. Considering the context and plain language of paragraph (2), we agree. Moreover, we find no other provision in USMS Policy Directive 9.21 that would have required the appellant to sit in the back while transporting a single prisoner in an unscreened vehicle.

---

required to review the agency's decision on an adverse action solely on the grounds invoked by the agency, and may not substitute what it considers to be a more adequate or proper basis).

We acknowledge the possibility that the appellant's decision to ride in the passenger seat was in violation of an unidentified policy not contained in USMS Policy Directive 9.21. Such a policy might well be prudent. However, the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency and may not substitute what it considers to be a more adequate or proper basis. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 333, ¶ 7 (2016); *see id.*, ¶¶ 14-15 (finding that the agency failed to prove a specification of improper storage of a firearm in an unoccupied Government-owned vehicle when the appellant's firearm was unauthorized, and the specification relied explicitly on an agency policy applicable to authorized firearms only). Accordingly, we do not sustain the charge of Failure to Follow Policy.

In sum, we find that the agency failed to prove any of its charges. Accordingly, the removal action must be reversed in its entirety.

<u>The appeal is remanded for further adjudication of the appellant's claim of EEO retaliation.</u>

Title 42 U.S.C. § 2000e-16, the Federal sector provision of Title VII of the Civil Rights Act of 1964, as amended (Title VII), provides that personnel actions affecting Federal employees "shall be made free from any discrimination based on race, color, religion, sex or national origin." In addition to prohibiting discrimination based on membership in a protected class, § 2000e-16 also prohibits agencies from retaliating against employees for opposing discrimination prohibited under Title VII. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 37 (2015), *overruled in part on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25; *cf. Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (holding that the Federal sector provision of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 633a(a), which similarly provides that personnel actions by Federal employees "shall be made free" from age discrimination, is sufficiently broad to prohibit retaliation against

an employee who complained of age discrimination). Claims of retaliation for protected Title VII activity are analyzed under the same framework used for status-based Title VII discrimination claims.[8] *Pridgen*, 2022 MSPB 31, ¶ 30.

An appellant may establish a violation of 42 U.S.C. § 2000e-16 by showing that his membership in a protected class or her protected Title VII activity was a motivating factor in the agency's action, even if it was not the only reason. *Pridgen*, 2022 MSPB 31, ¶ 21; *Savage*, 122 M.S.P.R. 612, ¶ 41; *cf. Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020) (holding that the parallel language of 29 U.S.C. § 633a "demands that personnel actions be untainted by *any* consideration of age") (emphasis added). However, to obtain full status quo ante relief, including reinstatement, back pay, and damages, the appellant must further show by preponderant evidence that the prohibited discrimination or retaliation was a but-for cause of the action, i.e., that the agency would not have taken the same action in the absence of the discriminatory or retaliatory motive.[9] *Pridgen*, 2022 MSPB 31, ¶ 22; *cf. Babb*, 140 S. Ct. at 1171 (holding that, to obtain reinstatement or back pay based on a violation of 29 U.S.C. § 633a, the employee "must show that age discrimination was a but-for cause of the employment outcome").

Either showing can be made by a variety of methods, alone or in combination. *Pridgen*, 2022 MSPB 31, ¶ 24 (citing *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). These include both direct

---

[8] The appellant's prior EEO activity appears to have primarily involved claims of race discrimination covered under Title VII. To the extent his complaints may have also involved allegations of age discrimination covered under the ADEA, the same analysis applies, *mutatis mutandis*.

[9] If an employee proves motivating factor but not but-for causation, in Equal Employment Opportunity Commission (EEOC) proceedings, at least, other forms of relief may be available that do not relate to the end result of the employment action, including declaratory relief, injunctive relief, costs, and attorney fees. *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 18 n.10. For example, the EEOC may order an agency to post notices, provide EEO training, and not discriminate or retaliate against an employee in the future. *Id*.

evidence, i.e., evidence that can be interpreted as an acknowledgement of discriminatory intent, and various sorts of circumstantial evidence. *Id*. Examples of circumstantial evidence include comparator evidence, i.e., evidence that employees outside the protected group but similarly situated in other respects received better treatment, or evidence that the agency's stated reason for its action is unworthy of belief and a mere pretext for discrimination. *Id*. An appellant may also rely on bits and pieces of evidence that, considered together, may compose a convincing mosaic of discrimination, such as suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent may be drawn. *Id*.

Contrary to the initial decision, we find that the record includes preponderant evidence that the appellant's EEO complaints were at least a motivating factor in his removal.[10] Most notably, the agency admits that, during the recorded conversation between SDUSM R., the Acting Chief DUSM, and the appellant, SDUSM R. referred to the appellant's EEO or Office of Professional Responsibility complaints as "bullshit complaints." *See* IAF, Tab 61 at 45 (agency's response to appellant's request for admissions). It is also undisputed that the appellant's EEO complaints had identified SDUSM R. as the responsible agency official. HT, Day 2 at 62-66. At the hearing, SDUSM R. walked back the agency's earlier admission and testified that, when he referred to "bullshit complaints," he meant the appellant's general tendency to complain, and not specifically the formal EEO complaints the appellant had filed with the agency. HT, Day 1 at 177; *see* HT, Day 2 at 73-74 (testimony of Acting Chief DUSM). Be that as it may, however, the appellant's various workplace complaints

---

[10] In finding that the appellant failed to establish his claim of EEO retaliation, the administrative judge stated that "[t]he process utilized by the agency to initiate and process disciplinary actions ensures that those who may be motivated to retaliate are not those who investigate, propose, and decide discipline." ID at 26. While the agency's disciplinary procedures may be designed to prevent unlawful retaliation, we are not persuaded that those procedures are foolproof.

included his discrimination complaints. As noted above, the appellant is not required to show that his EEO activity was the *only* factor in his removal. We also find it significant that SDUSM R. has a history of retaliatory conduct and was found by the Equal Employment Opportunity Commission Office of Federal Operations to have retaliated against another DUSM for protected EEO activity. IAF, Tab 61 at 47 (agency's response to appellant's request for admissions). Moreover, while SDUSM R. was not himself a proposing or deciding official, he played a significant role in the disciplinary proceedings by reporting the appellant's hunting citation to Internal Affairs, as well as providing the agency sworn testimony regarding the events underlying specifications 1 through 3 of the Conduct Unbecoming charge, in which he was personally involved. IAF, Tab 35 at 112-13, Tab 61 at 45 (response #9). It is also undisputed that the proposing and deciding officials were aware of the appellant's EEO activity through the investigative file, and the fact that they were not personally the subject of his complaints does not preclude a retaliatory motive on their part. *Cf. Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012) (observing that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by [protected disclosures under 5 U.S.C. § 2302(b)(8)] . . . as the criticism reflects on them in their capacities as managers and employees"). In addition, considering the agency's failure to prove any of its charges, we find that the appellant has shown by preponderant evidence that his EEO activity was at least a motivating factor in the agency's decision to remove him.

While we have found independent grounds for reversing the removal action, namely, the agency's failure to prove its charges, the question remains whether the appellant may be entitled to damages or other status quo ante relief. As to that issue, the Board has held that the burden of proof lies with the appellant to show by preponderant evidence that unlawful retaliation was a but-for cause of the agency's action. *Pridgen*, 2022 MSPB 31, ¶ 22. However, not

having the benefit of *Pridgen*, the administrative judge instead advised the appellant of the Board's prior holding that the agency bears the burden of showing by preponderant evidence that it would have taken the same action in the absence of the appellant's EEO activity. IAF, Tab 68 at 4. It is well-established that an administrative judge must apprise the appellant of the applicable burdens of proving a particular defense, as well as the kind of evidence the appellant must produce to meet his burden. *See Erkins v. U.S. Postal Service*, 108 M.S.P.R. 367, ¶ 8 (2008); *Carlisle v. Department of Defense*, 93 M.S.P.R. 280, ¶ 12 (2003); *see also Pridgen*, 2022 MSPB 31, ¶ 24 (stating that "[w]hen an appellant raises an affirmative defense of disparate treatment discrimination under Title VII, the administrative judge should notify her of the various standards and methods of proof, including the respective levels of relief available under each standard"). Since the appellant was not correctly advised of his burden with respect to but-for causation, we remand the case to the regional office for further adjudication of the appellant's EEO retaliation claim.

The Board has recognized that there are at least two ways for an appellant to prove but-for causation.[11] *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶¶ 15-19. First, the appellant may proceed under the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that framework, the appellant may establish a prima facie case by showing that he engaged in protected activity, the agency subjected him to an adverse employment action, and the unfavorable action gives rise to an inference of retaliation. *See Wilson*, 2024 MSPB 3, ¶ 16. The burden then shifts to the agency to articulate a legitimate, nonretaliatory reason for the action. If the agency fails to do so, or if the appellant successfully rebuts the agency's proffered reason as pretext, then the appellant has proven but-for causation.[12] *Id.*, ¶ 17. Second, an appellant may prove but-for causation under the motivating

---

[11] There may be other ways of proving but-for causation, such as by direct evidence. *See Thomas v. Department of State*, EEOC Appeal No. 01932717, 1994 WL 733682 at *4 (June 10, 1994).

factor framework, by first showing that retaliation was one reason for the challenged employment action, even if it was not the only reason. *Id*., ¶ 18. The burden will then shift to the agency to prove that it would have taken the same action even absent the retaliatory motive. If the appellant proves motivating factor and the agency does not prove by preponderant evidence that it would have taken the same action in the absence of retaliation, then the appellant has established but-for causation. *Id*. The appellant may choose to show but-for causation under the *McDonnell Douglas* framework or under the mixed-motive framework, or by proceeding under both theories simultaneously. *Id*., ¶ 19.

On remand, the administrative judge should provide the appellant an opportunity to present further evidence and argument, including a supplemental hearing if needed, on the issue of but-for causation. Because the suspension action must be reversed regardless of the outcome on remand, we will not delay in ordering the agency to reverse the action and provide appropriate back pay and benefits. *See Martin v. U.S. Postal Service*, 123 M.S.P.R. 189, ¶ 14 (2016).

## ORDER

We remand the case to the Central Regional Office for further adjudication, consistent with this Order, regarding the appellant's claim of retaliation for protected EEO activity. Notwithstanding the remand proceedings, we ORDER the agency to cancel the removal action and reinstate the appellant effective December 13, 2019. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

---

[12] In cases like this one, where the agency has already articulated a legitimate, nondiscriminatory reason for its actions, the factual inquiry can proceed directly to the third step of the analysis, i.e., the ultimate issue of whether the appellant has shown by preponderant evidence that the agency's reason for its action was a pretext for retaliation. *Wilson*, 2024 MSPB 3, ¶ 17.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

*Gina K. Grippando*

FOR THE BOARD:      _____
                    Gina K. Grippando
                    Clerk of the Board

Washington, D.C.



# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.